## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD E. FISCHBEIN, MD,              )
individually and as the representative of a   )
class of similarly-situated persons,   )
                                     )   Case No.
           Plaintiff,   )
                                       )
      v.                                     )   **Complaint – Class Action**
                                       )
IQVIA, INC.,                            )
                                       )
           Defendant.   )

## CLASS ACTION COMPLAINT

Plaintiff, Richard E. Fischbein, MD ("Plaintiff"), brings this action on behalf of himself and all other persons similarly-situated and, except for those allegations pertaining to Plaintiff or his attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendant IQVIA, Inc. ("Defendant"):

## PRELIMINARY STATEMENT

1.      Defendant has sent unsolicited advertisements by facsimile to Plaintiff and others in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, including regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.      Defendant sent Plaintiff at least two unsolicited advertisements by facsimile. True and correct copies of those facsimiles are attached as Exhibit A and Exhibit B. Defendant sent the same or substantially similar facsimiles to the other class members.

3.     Defendant is engaged in data mining for the healthcare industry. Defendant collects human health data for its customers and to add to its commercially-available database. For example, Defendant compensates physicians to provide information about drug prescriptions and aggregates, organizes, and sells such data to support the marketing efforts of drug makers and others.

4.     Plaintiff is a physician. Defendant's faxes solicited his participation in Defendant's data-collection business. According to the faxes, Defendant would compensate Plaintiff with points redeemable in a "rewards program" for merchant gift cards, event tickets, and merchandise, in exchange for Plaintiff sharing patient information with Defendant twice per quarter.

5.     Plaintiff did not expressly invite or give express permission to receive any advertisement from Defendant by fax. Plaintiff does not have an established business relationship with Defendant and, even if he did, Defendant's faxes do not contain an opt-out notice that complies with the requirements of the TCPA.

6.     Plaintiff brings this action pursuant to the TCPA on behalf of a nationwide class of all persons or entities sent one or more of Defendant's telephone facsimile messages ("faxes") soliciting participation in one or more studies or surveys in exchange for compensation, such as points in Defendant's rewards program or direct payment of money.

7.     On behalf of the class, Plaintiff seeks: (a) statutory damages for each violation of the TCPA, trebling of those statutory damages if the Court determines Defendant's violations were knowing or willful, and an injunction to halt

2

Defendant's unlawful fax advertisement program; and (b) an injunction to halt Defendant's unlawful fax advertising program.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff, Dr. Richard E. Fischbein, is a Pennsylvania resident and a physician in psychiatry in a practice located in Kingston, Pennsylvania.

9. Defendant, IQVIA, Inc., is a Delaware corporation with its principal place of business in Plymouth Meeting, Pennsylvania.

10. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under federal law, 47 U.S.C. § 227. *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012).

11. Personal jurisdiction exists over Defendant in Pennsylvania because its principal place of business is in the State, because Defendant transacts business within the State, and because Defendant committed tortious acts by causing the transmission of unlawful communications within the State.

12. Venue is proper in the Eastern District of Pennsylvania because Defendant is located within this District, Defendant committed statutory torts within this District, and a significant portion of the events took place here.

## FACTS

13. Defendant sent unsolicited advertisements by facsimile to Plaintiff and a class of similarly-situated persons.

14. Plaintiff has received at least two of Defendant's advertisements by facsimile. A true and correct copy of a fax Plaintiff received on November 29, 2017,

is attached as <u>Exhibit A</u>.  A true and correct copy of a fax Plaintiff received on July 24, 2018, is attached as <u>Exhibit B</u>.

15.     <u>Exhibit A</u> and <u>Exhibit B</u> are one-page documents Defendant sent by fax, soliciting Plaintiff's participation in studies or surveys in which Defendant expected to gather valuable information from Plaintiff in exchange for compensation.

16.     <u>Exhibit A</u> seeks physician participation in the National Disease and Therapeutic Index ("NDTI").

17.     The NDTI is a commercial database that was maintained by IMS Health[1] and commercially available to pharmaceutical manufacturers and other members of the healthcare industry.

18.     On information and belief, the data in the NDTI is gathered in an ongoing fashion from a panel of over 3,000 physicians of various specialties. Physicians submit quarterly reports that include diagnostic information and prescriptive trends broken down by medical specialty, patient profile, desired effects and co-prescriptions. When a physician writes and reports the prescription, not only is the usual information reported (drug name, amount, dosing instructions and duration), but also the indication for the drug, the patient's gender, age, sex, and method of payment, the site of the prescription (hospital, clinic, etc.), other drugs the patient is taking, other diagnoses, and some physical exam and laboratory data. This data, excluding patient identification, is provided to the company for inclusion

---

[1]     IMS Health, Inc. and Quintiles IMS Health, Inc. merged and now do business as IQVIA.

4

to the database.[2]

19.     The NDTI data is most often used by pharmaceutical manufacturer marketing departments for promotional and strategic planning purposes.

20.     Exhibit B solicited Plaintiff's valuable participation in a supposed "research study" in exchange for compensation.

21.     Exhibit A and Exhibit B contain Defendant's logo and trademark information and neither fax is purely informational or part of an ongoing transaction.[3]

22.     Exhibit A and Exhibit B advertise the commercial availability or quality of Defendant's market research property, products, or services.

23.     Exhibit A and Exhibit B advertise a commercially available opportunity for Plaintiff to provide valuable information and opinions in exchange for compensation from Defendant.

24.     Exhibit A and Exhibit B are designed to create future opportunities for Defendant and its clients or affiliates to send Plaintiff more faxes and advertisements in the future.

25.     Exhibit A and Exhibit B promote the purchase of items available on their on-line catalog, www.imsrxpanels.com, using points.

---

[2]     David B. Nash, MD, MBA, *National Drug and Therapeutic Index*, 27 No. 11 P&T 530 (November 2002) (discussing the NDTI; specifically discussing the NDTI's purpose as a commercially available product, purchased by the healthcare industries). Exhibit C.

[3]     On November 6, 2017, QuintilesIMS announced that it changed its name to IQVIA. Its name change took place on November 6, 2017, and beginning November 15, 2017, equity shares of the company changed to IQVIA.  Exhibit D. Defendant sent Exhibit A to Plaintiff after QuintilesIMS changed its name to IQVIA.

26.     Plaintiff did not expressly invite or give permission to anyone to send Exhibits A-B or any other advertisement from Defendant to Plaintiff's fax machine.

27.     Defendant is the world's largest "contract research organization" ("CRO").[4] Defendant serves health information industries, including the pharmaceutical, biotechnology, and medical device industries. It provides preclinical services including clinical monitoring and data management.

28.     Defendant's clients are companies in the health care industry including pharmaceutical companies, healthcare providers, and government-based entities.  Defendant's clients are in the business of developing new medicines and drugs in the healthcare market, thus Defendant has an interest to expeditiously get its client's medical product onto the market.

29.     Defendant is a for-profit business organization. Its clients pay it for assisting in the preclinical process. Part of Defendant's business practice involves sending unsolicited faxes to medical providers soliciting their valuable participation and provision of valuable patient data and other information in exchange for compensation in the form of points redeemable for gift cards, tickets, and merchandise in Defendant's rewards program.

30.     The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement...." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited

---

[4]     *See* The Vall D'Hebron Campus signs a Prime Site Agreement with IQVIA, the world's largest clinical trials management company, https://www.iqvia.com/en/locations/spain/newsroom/2018/04/prime-site-agreement (last visited Mar. 28, 2019).

advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." *Id.*, § 227 (a)(5) (emphasis added).

31.    Defendant's faxes advertise and solicit compensated participation in Defendant's commercially-available data collection business, whether for a client-funded study or to supplement or refine Defendant's commercially-available database.

32.    On information and belief, Defendant provides non-cash points and compensation to induce health professionals to provide valuable information in "surveys" and "studies," and Defendant sells or licenses the collected information to Defendant's paying customers.

33.    Defendant's unsolicited faxes damaged Plaintiff and the other class members. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving or sending authorized faxes, cause undue wear and tear on the recipients' fax machines, waste paper and ink toner, and always waste the recipients' valuable time in discerning the source and purpose of the unsolicited message. An unsolicited fax interrupts the recipient's privacy. Reviewing the fax wastes the recipient's valuable time that would have been spent on something else.

34.    Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant's unsolicited advertisements. Their fax machines are ready to send and receive their urgent communications, or private communications

7

about patients' medical needs, not to receive Defendant's unlawful advertisements.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this case as a class action on behalf of himself and all others similarly situated as members of a class, initially defined as follows:

> All persons and entities who received one or more facsimiles at any time after November 13, 2015 from Quintiles, IMS or IQVIA inviting them to participate in a study in exchange for points in a rewards program.

Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about the scope of Defendant's fax advertising practice and about any affirmative defenses Defendant pleads.

36.     Excluded from the class is Defendant, any entity in which any Defendant has a controlling interest, each of Defendant's officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

37.     In this action, Plaintiff intends to discover, include, and resolve the merits of claims about all advertisements Defendant sent by fax, not merely the two faxes Defendant is known to have sent to Plaintiff.

38.     Defendant's fax advertising program involved other, substantially-similar advertisements soliciting medical professionals to provide valuable information in exchange for compensation.

39.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. The action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of

Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

40. **Numerosity/impracticality of joinder.** The class includes more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. Plaintiff does not know the precise number of class members or their identities, but expects obtain such information from Defendant's records or the records of third parties.

41. **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a. Whether Exhibit A, Exhibit B, and other to-be-discovered facsimiles sent by or on behalf of Defendant solicited participation in studies in exchange for points in Defendant's reward program and advertised the commercial availability or quality of any property, goods or services;

b. The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which it sent the faxes at issue;

9

c.      The manner and method Defendant or agents of Defendant used to send the faxes at issue to Plaintiff and the other class members;

d.      Whether Defendant violated the TCPA and the Court should award statutory damages to Plaintiff and the other class members;

e.      If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion under the TCPA to increase the amount of the statutory damages award to an amount equal to not more than three times the amount; and

f.      Whether the Court should enjoin Defendant from sending facsimiles like those at issue.

42.    **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because all were injured by the same wrongful conduct. Each received Defendant's unsolicited advertisements by facsimile during broadcasts to multiple targeted recipients. If Plaintiff prevails on his claims, then the other class members will prevail as well.

43.    **Adequacy of representation.** Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class he seeks to represent. Plaintiff has retained attorneys who are competent and experienced in complex class action litigation, and in TCPA litigation in particular. Plaintiff intends to vigorously prosecute this action. Plaintiff and counsel will fairly and adequately protect the interest of the class.

44.   **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford and wanted to undertake individual litigation, such cases would unduly burden the court system. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act, 47 U.S.C. § 227

45.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

46.   Plaintiff brings Count I on behalf of himself and a class of similarly situated persons.

47.   The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

48.   Defendant sent Exhibit A and Exhibit B to Plaintiff's fax machine, and sent the same or substantially similar facsimiles to the telephone facsimile machines of the other class members (the "Faxes").

49.   The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services

11

which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

50. The Faxes promote Defendant's commercially-available studies.

51. Defendant did not obtain Plaintiff's express invitation or permission before sending any advertisement to Plaintiff by facsimile. Therefore, Defendant will not be able to allege or prove a defense of "prior express invitation or permission."

52. Plaintiff does not have an "established business relationship" with Defendant, so Defendant cannot raise such an "EBR" defense to Plaintiff's claim. Moreover, Exhibit A and Exhibit B do not include the opt-out notice the TCPA requires on any fax sent on the basis of an EBR, foreclosing Defendant's attempt to raise EBR as a defense to any class member's TCPA claim. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v). Exhibit A contains no opt-out information. Exhibit B does not contain an opt-out notice in the form required. Specifically, 47 C.F.R. § 64.1200 (a) (4) (iii) requires that every opt-out notice must set forth the requirements under 47 U.S.C. § 227 (b) (2) (E) for a binding request to prevent future advertising facsimiles: (1) the request must identify the telephone number or numbers of the telephone facsimile machine(s) to which the request relates; (2) the request must be made to the telephone or facsimile number of the sender; and (3) no person at the requesting party provide express invitation or permission to the sender "subsequent to such request." Exhibit B fails to identify that required information.

53.    Defendant sent Exhibits A-B to Plaintiff and other health professionals offering compensation in exchange for their participation in one or more internet or telephone surveys.

54.    Through Exhibits A-B, Defendant intended to gather opinions and other valuable market research data from participants and then provide that information to Defendant's paying clients in the healthcare industry.

55.    The TCPA provides a private right of action as follows:

> 3.    Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)    Both such actions.

47 U.S.C. § 227 (b) (3).

56.    The Court may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

57.    Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as Exhibits A-B) to Plaintiff and the other class members without their prior express invitation or permission.

58.    The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if Defendant's actions were negligent. 47

13

U.S.C. § 227 (b) (3).

59. Defendant is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, it owned the list to which faxes were sent, or under general principles of vicarious liability, including actual authority, had apparent authority and ratification.

60. Defendant's actions damaged Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendant's faxes. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review Defendant's unlawful fax. Defendant's faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. The subject faxes unlawfully used the fax machines of Plaintiff and the other class members.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendant, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages for each violation of the TCPA;

C. That, if it finds Defendant willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the

statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendant from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

Respectfully submitted,

Richard E. Fischbein, MD, individually and as the representative of a class of similarly-situated persons

By:   /s/

One of his attorneys

Richard Shenkan (PA 79800)
SHENKAN INJURY LAWYERS, LLC
P.O. Box 7255
New Castle, PA  16107
(800) 601-0808 (phone)
(888) 769-1774 (fax)
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice to be sought)
David M. Oppenheim (pro hac vice to be sought)
Tod A. Lewis (pro hac vice to be sought)
Molly E. Stemper (pro hac vice to be sought)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5500 (phone)
(312) 658-5555 (fax)
service@classlawyers.com

# EXHIBIT A

 QuintilesIMS

**NDTI™** *National Disease and Therapeutic Index™*
*One IMS Drive*
*Plymouth Meeting, PA 19462*

**ATTENTION TO: Dr. RICHARD FISCHBEIN**
IMS Reference #: 664539

You are invited to join a select group of physicians who participate in a nationally recognized, **HIPAA-compliant study** that collects data from office-based physician practices. This is to track patterns of diseases and identify new therapeutic opportunities across the entire US.
**Two days per quarter,** record the following patient information **online.**

- Diagnosis
- Desired action
- Therapy (i.e., drugs prescribed)
- HIPAA-compliant patient demographics

**Your participation in this initiative will benefit both public and private-sector establishments across the globe,** including:

- Centers for Disease Control and Prevention
- Teaching hospitals and medical schools
- World Health Organization (WHO)
- Healthcare manufacturers and R&D

### REWARDS PROGRAM

As a reward for your contributions, you will earn points towards the purchase of a wide variety of gifts from our catalog (www.imsrxpanels.com), items such as;

- GIFT CARDS (*Macy's, Target, Home Depot, Restaurants, Gas Cards, etc.*)
- TICKETS (*Cinemas, Concerts, Sporting Events*)
- MERCHANDISE (*Garmin®-GPS, KitchenAid®-Housewares, Apple®-electronics, VISA®-Cashcard.*)
- FREE LINKS to Medical Journals & AMA Website

### TO PARTICIPATE, PLEASE PRINT CLEARLY AND FAX TO 1-877-270-0502

_____ Yes, I'll participate       _____ I would like to know more about the study. Contact me.

**Name**_____

**Address**_____

**City**_____ State_____ **Zip**_____
**Phone**_____ Fax_____
**Mobile Number**_____
**Primary Spedalty**_____
**Email**_____

*For more information, please contact us via email at: Maribeth.Francisco@quintilesims.com or via phone at: 1-866-373-0383.*
*-PLEASE DISREGARD IF YOU ALREADY PART OF NDTI STUDY-*

RichardFischbein000019

# EXHIBIT B

2018/07/24 20:15:00   1 /1

Sent from: (877)-270-0502
IMS Health & Quintiles are now



IQVIA™

---

**ATTENTION TO: DR. RICHARD FISCHBEIN**
**Specialty: PSY**

You are invited to join a select group of physicians who participate in a nationally recognized, HIPAA-compliant research study that collects data from office-based physician practices. The research study tracks patterns of diseases and identifies new therapeutic opportunities across the entire US.
For two days per quarter, record the following patient information on-line:

- Diagnosis
- Desired action
- Therapy (i.e., drugs prescribed)
- HIPAA-compliant patient demographics

**Your participation in this initiative will benefit both public and private-sector establishments across the globe,** including:

- Centers for Disease Control and Prevention
- Teaching hospitals and medical schools
- World Health Organization (WHO)
- Healthcare manufacturers and R&D

---

### Honorarium

Each quarter you report, points will be added to your account towards purchase of a wide variety of gifts from our on-line catalog (www.imsrxpanels.com), items such as:

- **E-Gift and Gift Cards (Macy's, Target, Home Depot, Restaurants, etc.)**
- **Tickets (Cinemas, Concerts, Sporting Events, etc.)**
- **Merchandise (Electronics, Travel, Home, Jewelry, etc.)**

---

If you are interested in learning more and to see if you qualify in joining our web panel, please **Fax a copy of the completed form below to: 1-877-270-0502**

| ☐ Yes, please register me for this study | ☐ No, do not register me at this time |
|---|---|

Name: _____

Address: _____

Primary Specialty: _____

Phone Number: _____   Fax Number: _____

Cell Phone Number (Optional): _____

E-Mail address: _____

Any additional information, please contact us via email at usdocnet@iqvia.com or toll-free at 1-866-373-0383.

Thank you for considering participating in our study. We look forward to your response.

*Notice is hereby given that the recipient of this fax may opt-out of receiving future faxes from IQVIA and/or its affiliates by contacting the following toll-free number 1-866-373-0383 and/or toll-free fax number 1-877-270-0502, 24 hours a day, 7 days a week, 365 days a year. A failure to comply with such a request within 30 days is unlawful.*

# EXHIBIT C

EDITORIAL



# National Drug and Therapeutic Index

David B. Nash, MD, MBA

Imagine that your P&T committee wants to find the latest information on drug-prescribing activity in the community. Imagine that the committee also wants to create individual physician profiles of hospital-based practitioners and to learn how their outpatient prescribing habits might compare with those of other practitioners. Would such a database be valuable to P&T committees around the country?

I believe the answer to my rhetorical question is a resounding yes! Fortunately, there is a place one can turn to. For more than 40 years, IMS Health, headquartered in suburban Philadelphia, has sponsored the National Drug and Therapeutic Index (NDTI). For the last nine years, I have had the privilege of serving as the chairman of the advisory board for the NDTI.

Today, nearly 3,000 physicians across dozens of specialties submit quarterly reports to IMS Health headquarters about their individual prescribing behaviors. Without identifying individual patients, these scores of physicians, with a compliance rate exceeding 90%, dutifully submit this information on a disease-specific basis. Although I know that some readers might be incredulous, I have carefully reviewed these reporting tools myself. Patient-related variables that are reported in the NDTI include age, race, sex, method of payment, referral, blood pressure, and interval since the last visit. Pharmaceutical product-related variables include dosage, therapy status, desired action, strength, and diagnosis. By multiplying these patient-related and product-related variables with 3,000 prescribing physicians in hundreds of geographic locations throughout the nation, the NDTI creates a unique snapshot of current outpatient physician-prescribing behaviors.

Currently, the NDTI is principally a pharmaceutical company marketing and strategic planning tool. It provides product acquisition and market analyses, line-extension opportunities, and a glimpse at the competitive landscape. Even so, I see the NDTI through a somewhat different lens.

Ad-hoc studies and other syndicated reports available under the NDTI umbrella might give P&T committee members crucial benchmarking information that is simply unavailable elsewhere. This would give hospital medical directors and managed care leaders an opportunity to sit down at a negotiating table, without the political rhetoric, armed with detailed current practice information. The value of academic detailing could be greatly improved if clinical leaders brought NDTI data to physicians and enabled them to see how they relate to their local peers, in a nonpunitive fashion. Instead of thinking about some national practice guideline from an organization thousands of miles away, the NDTI could give virtually every community–hospital-based P&T committee an opportunity to focus directly on local practice with local implications.

The NDTI is linked with other commercial tools from IMS Health, including "Wrxite Decision," which offers in-depth insight into the market for promotional planning and targeting applications. It takes the NDTI database and links it to the American Medical Association's Annual Physician Survey and U.S. census data. IMS Health describes it as a physician focus group on your personal computer. I would think of it as an opportunity for P&T committee members to regularly reassess formulary design and construction based on reliable current and local prescribing behavior.

Recently, the NDTI has become more Web-savvy. With readily available software, P&T leaders can create patient-specific and disease-specific graphs showing, for example, how patient visits for esophagitis have increased dramatically over the last six years and the types of products that have been prescribed for this malady. Because years' worth of data are available from a longitudinal perspective, P&T leaders can judge the impact of drug utilization evaluation (DUE) programs and the like via NDTI tracking tools. Educational programs launched in 2001 can be reevaluated in 2003, lending

> The NDTI…provides an opportunity for P&T committee members to regularly reassess formulary design and construction based on reliable current and local prescribing behavior.

credence to the measurement of educational outcomes.

Surely, I am biased because of my personal involvement over a long period of time with the NDTI and with my IMS Health colleagues. However, I have reviewed the NDTI specialty profiles for pediatrics, general surgery, neurology, and the like. I've learned a lot about ambulatory practice and the challenges inherent in good pharmacological care. I'd like to see this information move beyond its historical marketing prowess to a new plateau, one characterized by a robust outcomes research agenda and by documented improvements in physician-prescribing behavior. Doctors ought to have access to this kind of information on a regular basis; this step would enable them to close the feedback loop, to limit variation, and to improve patient outcomes. The NDTI of the future might be just what the doctor ordered.

You can learn more about IMS and the NDTI at www.imshealth.com or by calling 1-800-523-5333. As usual, I am very interested in your views. You can reach me at my email address: david.nash@mail.tju.edu.



# EXHIBIT D

# QuintilesIMS is now IQVIA

DANBURY, Conn. & RESEARCH TRIANGLE PARK, N.C.--(BUSINESS WIRE (http://www.businesswire.com))-- QuintilesIMS (NYSE:Q) today announced that it will be changing its name to IQVIA, a company dedicated to using analytics and science to help healthcare stakeholders find better solutions for their patients, effective November 6, 2017. Beginning on November 15, 2017, equity shares of the company will trade on the NYSE under the new name and new ticker symbol "IQV." Until then, IQVIA will continue to be listed under QuintilesIMS and symbol "Q" per the listing notification requirements of the NYSE.

IQVIA's client solutions are powered by the IQVIA CORE™. The CORE enables IQVIA to provide customized solutions for clients leveraging the world's largest curated healthcare information source, advanced analytics, leading technologies and extensive industry knowledge across diseases, geographies and scientific methods. It fuels the company's approach to human data science, including faster, more predictable clinical development, innovative approaches to generating real-world evidence, machine learning to improve patient care, and strategies for precision commercial engagement. The seamless integration of these elements from molecu to market enables our customers to drive enhanced value, access and health outcomes around the world.

"Today is a defining moment for our organization as we introduce a new name that aligns with our vision to help stakeholders drive healthcare forward," said IQVIA Chairman and CEO Ari Bousbib. "Our clients have been instrumental in our becoming IQVIA. IMS Health and Quintiles came together because our clients were asking for better, faster ways to bring innovations to patients and capture the improvements the industry has been pursuing for years. Since the merger, we've worked to integrate our capabilities in advanced analytics, leading technologies and therapeutic expertise into powerful, differentiated offerings. Our vision is to outpace the inevitable progress of change across the life sciences and accelerate our ability to empower healthcare decision makers to meet the future head on."

IQVIA's ongoing commitment to data security and privacy protection measures and decades of deep, practical experience are critical drivers of our global leadership. As a company, we w continue to engage in a wide variety of governance practices and administrative, technical an physical safeguards and controls to protect individual privacy. We work closely with data protection authorities, trusted third parties and privacy experts around the world to ensure w are diligent in the protection of individual privacy.

More information about IQVIA can be found at www.IQVIA.com (http://cts.businesswire.com/ct/CT? id=smartlink&url=http%3A%2F%2Fwww.IQVIA.com&esheet=51711250&newsitemid=2017110€ US&anchor=www.IQVIA.com&index=1&md5=57a21cff88af7b831af6a585adc65c98) and this video link: http://bit.ly/2ISbrhn (http://cts.businesswire.com/ct/CT? id=smartlink&url=http%3A%2F%2Fbit.ly%2F2ISbrhn&esheet=51711250&newsitemid=2017110€ US&anchor=http%3A%2F%2Fbit.ly%2F2ISbrhn&index=2&md5=79646de359eee478d73ef7d585

## About IQVIA

IQVIA (NYSE:IQV) is a leading global provider of information, innovative technology solutions and contract research services focused on using data and science to help healthcare clients find better solutions for their patients. Formed through the merger of IMS Health and Quintiles, IQVIA offers a broad range of solutions that harness advances in healthcare information, technology, analytics and human ingenuity to drive healthcare forward. IQVIA enables companies to rethink approaches to clinical development and commercialization, innovate with confidence as well as accelerate meaningful healthcare outcomes. IQVIA has approximately 55,000 employees in more than 100 countries, all committed to making the potential of human data science a reality. IQVIA's approach to human data science is powered by the IQVIA CORE™, driving unique actionable insights at the intersection of big data, transformative technology and analytics with extensive domain expertise.

IQVIA is a global leader in protecting individual patient privacy. The company uses a wide variety of privacy-enhancing technologies and safeguards to protect individual privacy while generating and analyzing the information that helps their customers drive human health outcomes forward. IQVIA's insights and execution capabilities help biotech, medical device and pharmaceutical companies, medical researchers, government agencies, payers and other healthcare stakeholders tap into a deeper understanding of diseases, human behaviors and scientific advances, in an effort to advance their path toward cures. To learn more, visit www.IQVIA.com (http://cts.businesswire.com/ct/CT? id=smartlink&url=http%3A%2F%2Fwww.IQVIA.com&esheet=51711250&newsitemid=20171106 US&anchor=www.IQVIA.com&index=3&md5=99148e98cd49340bb131384e36285227).

## IQVIAFIN

Click here to subscribe to Mobile Alerts for QuintilesIMS. (http://cts.businesswire.com/ct/CT? id=smartlink&url=http%3A%2F%2Falerts.businesswire.com%2Fsubscribe%2Fquintilesims&esh US&anchor=Click+here+to+subscribe+to+Mobile+Alerts+for+QuintilesIMS.&index=4&md5=86

# EXHIBIT E

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

**November 7, 2019**

In re: *Richard E. Fischbein, M.D. v. IQVIA, Inc.* (ED Pennsylvania).

### Demand for Preservation of All Tangible Documents
### Including Electronically Stored Information

As part of the Class Action Complaint against IQVIA, Inc. ("Defendant"), plaintiff, Richard E. Fischbein, M.D., hereby issues a demand for Defendant to preserve all tangible documents, including electronically stored information.

As used in this document, "you" and "your" refers to Defendant, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and its respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);

1

- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

## A.    Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI regarding the time period of June 2015 to the date You receive this letter. Potentially relevant ESI includes, but is not limited to information:

1.    Regarding the events and causes of action described in Plaintiff's Class Action Complaint; and
2.    Regarding Your claims or defenses to Plaintiff's Class Action Complaint.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered

2

and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

**B.     Suspension of Routine Destruction**

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

**C.     Guard Against Deletion**

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any

3

custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

### D.      Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each person acting in the capacity or holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from June 2015 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

### E.      Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

4

### F.    Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### G.    Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### H.    Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

### I.     Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### J.     Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### K.     Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### L.     System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendant removing its ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

6

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including the so-called "unallocated clusters," holding deleted files.

## M.   Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

## N.   Do Not Delay Preservation

I'm available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

7

### O.    Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.


Respectfully,


/s/ Phillip A. Bock

Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
512-739-0390 (cell)
312-658-5515 (direct)
service@classlawyers.com

N I Q A
19-5365

JS 44 (Rev 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RICHARD E. FISCHBEIN, MD, | IQVIA, Inc. |

**(b)** County of Residence of First Listed Plaintiff    Luzerne
*(EXCEPT IN U S  PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery
*(IN U S  PLAINTIFF CASES ONLY)*

NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address  and Telephone Number)*

Richard Shenkan, Shenkan Injury Lawyers, LLC, P.O. Box 7255, New Castle, PA  16107, (800) 601-0808

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ◌ 1   U S  Government Plaintiff
- ☒ 3   Federal Question *(U S  Government Not a Party)*
- ◌ 2   U S  Government Defendant
- ◌ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ◌ 1 | Incorporated or Principal Place of Business In This State | ◌ 4 | |
| Citizen of Another State | ◌ 2 | ◌ 2 | Incorporated and Principal Place of Business In Another State | ◌ 5 | |
| Citizen or Subject of a Foreign Country | ◌ 3 | ◌ 3 | Foreign Nation | ◌ 6 | |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for  Nature of Suit Code Descriptions

### CONTRACT
- ◌ 110 Insurance
- ◌ 120 Marine
- ◌ 130 Miller Act
- ◌ 140 Negotiable Instrument
- ◌ 150 Recovery of Overpayment & Enforcement of Judgment
- ◌ 151 Medicare Act
- ◌ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ◌ 153 Recovery of Overpayment of Veteran's Benefits
- ◌ 160 Stockholders' Suits
- ◌ 190 Other Contract
- ◌ 195 Contract Product Liability
- ◌ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ◌ 310 Airplane
- ◌ 315 Airplane Product Liability
- ◌ 320 Assault, Libel & Slander
- ◌ 330 Federal Employers' Liability
- ◌ 340 Marine
- ◌ 345 Marine Product Liability
- ◌ 350 Motor Vehicle
- ◌ 355 Motor Vehicle Product Liability
- ◌ 360 Other Personal Injury
- ◌ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ◌ 365 Personal Injury - Product Liability
- ◌ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ◌ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ◌ 370 Other Fraud
- ◌ 371 Truth in Lending
- ◌ 380 Other Personal Property Damage
- ◌ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ◌ 625 Drug Related Seizure of Property 21 USC 881
- ◌ 690 Other

### LABOR
- ◌ 710 Fair Labor Standards Act
- ◌ 720 Labor/Management Relations
- ◌ 740 Railway Labor Act
- ◌ 751 Family and Medical Leave Act
- ◌ 790 Other Labor Litigation
- ◌ 791 Employee Retirement Income Security Act

### BANKRUPTCY
- ◌ 422 Appeal 28 USC 158
- ◌ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ◌ 820 Copyrights
- ◌ 830 Patent
- ◌ 835 Patent - Abbreviated New Drug Application
- ◌ 840 Trademark

### SOCIAL SECURITY
- ◌ 861 HIA (1395ff)
- ◌ 862 Black Lung (923)
- ◌ 863 DIWC/DIWW (405(g))
- ◌ 864 SSID Title XVI
- ◌ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ◌ 870 Taxes (U S  Plaintiff or Defendant)
- ◌ 871 IRS- Third Party 26 USC 7609

### OTHER STATUTES
- ◌ 375 False Claims Act
- ◌ 376 Qui Tam (31 US 3729(a))
- ◌ 400 State Reapportionment
- ◌ 410 Antitrust
- ◌ 430 Banks and Banking
- ◌ 450 Commerce
- ◌ 460 Deportation
- ◌ 470 Racketeer Influenced and Corrupt Organizations
- ◌ 480 Consumer Credit
- ◌ 485 Telephone Consumer Protection Act
- ◌ 490 Cable/Sat TV
- ◌ 850 Securities/Commodities/ Exchange
- ☒ 890 Other Statutory Actions
- ◌ 891 Agricultural Acts
- ◌ 893 Environmental Matters
- ◌ 895 Freedom of Info Act
- ◌ 896 Arbitration
- ◌ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ◌ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ◌ 210 Land Condemnation
- ◌ 220 Foreclosure
- ◌ 230 Rent Lease & Ejectment
- ◌ 240 Torts to Land
- ◌ 245 Tort Product Liability
- ◌ 290 All Other Real Property

### CIVIL RIGHTS
- ◌ 440 Other Civil Rights
- ◌ 441 Voting
- ◌ 442 Employment
- ◌ 443 Housing/ Accommodations
- ◌ 445 Amer w/Disabilities - Employment
- ◌ 446 Amer w/Disabilities - Other
- ◌ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ◌ 463 Alien Detainee
- ◌ 510 Motions to Vacate Sentence
- ◌ 530 General
- ◌ 535 Death Penalty
**Other:**
- ◌ 540 Mandamus & Other
- ◌ 550 Civil Rights
- ◌ 555 Prison Condition
- ◌ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ◌ 462 Naturalization Application
- ◌ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ◌ 1 Original Proceeding
- ◌ 2 Removed from State Court
- ◌ 3 Remanded from Appellate Court
- ☒ 4 Reinstated or Reopened
- ◌ 5 Transferred from Another District *(specify)*
- ◌ 6 Multidistrict Litigation - Transfer
- ◌ 8 Multidistrict Litigation - Direct

## VI. CAUSE OF ACTION

Cite the U S  Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
Telephone Consumer Protection Act ("TCPA"), 47 U S C  Section 227

Brief description of cause
Violation of the TCPA's Junk Fax Prohibition

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND:   ◌ Yes   ◌ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE   SEE ATTACHED RIDER

DOCKET NUMBER

DATE
11/07/2019

SIGNATURE OF ATTORNEY OF RECORD

NOV 1 4 2019

### FOR OFFICE USE ONLY

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __Dr. Richard E. Fischbein, 562 Wyoming Ave. FL 1 Kingston, PA 18704__

Address of Defendant: __IQVIA, Inc., One IMS Drive, Plymouth Meeting, Pennsylvania, 19460__

Place of Accident, Incident or Transaction: _____Pennsylvania, USA_____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __11/07/2019__   _Richard Shenkan_   PA 79800

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

**A.    *Federal Question Cases:***

- ☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2.  FELA
- ☐ 3.  Jones Act-Personal Injury
- ☐ 4.  Antitrust
- ☐ 5.  Patent
- ☐ 6.  Labor-Management Relations
- ☐ 7.  Civil Rights
- ☐ 8.  Habeas Corpus
- ☐ 9.  Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* __47 U.S.C. SS 227__

**B.    *Diversity Jurisdiction Cases:***

- ☐ 1.  Insurance Contract and Other Contracts
- ☐ 2.  Airplane Personal Injury
- ☐ 3.  Assault, Defamation
- ☐ 4.  Marine Personal Injury
- ☐ 5.  Motor Vehicle Personal Injury
- ☐ 6.  Other Personal Injury *(Please specify):* _____
- ☐ 7.  Products Liability
- ☐ 8.  Products Liability – Asbestos
- ☐ 9.  All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Richard Shenkan__, counsel of record or pro se plaintiff, do hereby certify

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: __01/07/2019__   _signature_   PA 79800

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Richard Fischbein, M.D., | : | CIVIL ACTION |
| v. | : | |
| IQVIA, Inc | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                                      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
      and Human Services denying plaintiff Social Security Benefits.                                               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
      exposure to asbestos.                                                                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
      commonly referred to as complex and that need special or intense management by
      the court. (See reverse side of this form for a detailed explanation of special
      management cases.)                                                                                                          (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.              ( )

| | | |
|---|---|---|
| 11/07/2019 | Richard Shenkan | Plaintiff and the Putative Class |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (800)601-0808 | (888)769-1774 | rshenkan@shenkanlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

NOV 1 4 2019

Rider to Civil Cover Sheet

| Case Name | Case Number | Jurisdiction | Judge | Date Terminated |
|---|---|---|---|---|
| Mussat v. IQVIA, Inc. | 19-1204 | Seventh Circuit | | Pending |
| Advanced Obstetrics & Gynecology, P.C. v. Quintiles | 3:18-cv-197 | N.D. Miss. | Neal B. Biggers | 11/06/2019 |
| Fischbein v. IQVIA, Inc. | 1:19-cv-373 | M.D. NC | Thomas D. Schroeder | 06/06/2019 |
| Thomas v. IQVIA, Inc. | 1:19-cv-180 | M.D. NC | L. Patrick Auld (M) | 03/22/2019 |
| Garner v. IQVIA, Inc. | 8:19-cv-001 | M.D. Fla. | William F. Jung | 03/11/2019 |