IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD E. FISCHBEIN, MD,** individually and as the representative of a class of similarly situated persons | : : : : : : : : : : : | **CIVIL ACTION** NO. 19-5365 |
| *Plaintiff* | | |
| v. | | |
| **IQVIA INC.** | | |
| *Defendant* | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                              JULY 30, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

Richard E. Fischbein ("Plaintiff") brings this action on behalf of himself and other similarly situated persons against IQVIA Inc. ("Defendant") alleging that Defendant sent him unsolicited faxes that constitute unsolicited advertisements prohibited by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* (the "TCPA"). [ECF 1]. Before this Court are Defendant's motion to dismiss for failure to state a claim upon which relief can be granted filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), [ECF 24], Plaintiff's response in opposition thereto, [ECF 28], Defendant's reply, [ECF 31], and Defendant's Notice of Supplemental Authority. [ECF 32]. For the reasons set forth below, Defendant's motion to dismiss is denied.

**FACTUAL BACKGROUND**

When ruling on a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The pertinent facts are summarized as follows:

Defendant is a research organization that provides services, such as clinical trial monitoring and data management, to clients in the health information industry. (Compl. ¶ 27). Its business includes the collection of human health data for clients and to augment its own commercial databases. (*Id.* at ¶ 3). Defendant obtains its data by, *inter alia*, sending faxes to medical providers that encourages them to share information about their patients and treatment practices. (*Id.* at ¶ 29).

Plaintiff is a physician who received at least two faxes from Defendant requesting that he share information about his patients.[1] (*Id.* at ¶¶ 8, 14). The faxes were substantially similar, inviting Plaintiff to participate in a "nationally recognized, HIPAA-compliant" study by submitting patient information to Defendant online, on an ongoing basis. (Compl. Ex. A, B). The faxes indicated that in return for any patient data Plaintiff submitted, he would receive "points" "toward purchase of a wide variety of gifts from [Defendant's] on-line catalog," which included items such as third-party gift cards, event tickets, and merchandise. (*Id.*). Prior to receiving the faxes, Plaintiff had no business relationship with Defendant and did not request or consent to receive the faxes. (Compl. ¶ 5).

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In evaluating such a motion, courts may also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *see also* Fed. R. Civ. P. 10(c). Any "[t]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" may be disregarded. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) (internal citation omitted).

To survive a motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, the complaint must contain sufficient facts to "allow[] the court

---

[1] The first fax was sent by Defendant when it operated under a former company name, Quintiles IMS. (Compl. at p. 5 n.3).

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). If, after applying this standard, a court finds that the plaintiff could not be entitled to relief, it should dismiss the claim. *Id*. at 210.

**DISCUSSION**

As noted, Plaintiff asserts a claim under the TCPA, alleging that Defendant violated § 227(b)(1)(C), which prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C). Defendant does not dispute that it sent Plaintiff two faxes and that these faxes were unsolicited. Defendant contends, however, that the faxes are not "advertisements" and, as such, do not fall within the ambit of the TCPA. For the reasons discussed below, this Court disagrees.

The TCPA defines the term "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services[.]" 47 U.S.C. § 227(a)(5). The United States Court of Appeals for the Third Circuit ("Third Circuit") has explained that, in order to meet this definition, a fax "must promote goods or services to be bought or sold, and . . . have profit as an aim." *Mauthe v. Optum Inc.*, 925 F.3d 129, 133 (3d Cir. 2019) (quoting *Mauthe v. Nat'l Imaging Assoc.*, 767 F. App'x 246, 248 (3d Cir. 2019) ("*NIA*")). [2] However, "a fax does not

---

[2] Defendant points out that not all courts agree that offers to buy can constitute advertisements under the TCPA. Nevertheless, the Third Circuit has recently reaffirmed its determination that offers to buy items or services can constitute advertisements under the TCPA. *See Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 562 (3d Cir. 2020), *reh'g and en banc reh'g denied* (3d Cir. 2020) ("[A] fax attempting to buy goods or services is no less commercial than a fax attempting to sell goods or services to the recipient[.]"). This Court is bound by the Third Circuit's holding; thus, contrary decisions of other federal courts outside of this Circuit have no bearing on this Court's decision. Indeed, in *Olson*, the Third Circuit acknowledged several of the decisions by other courts that Defendant cites and indicated that it found them unpersuasive.

become an advertisement merely because the sender intended it to enhance the quality of its products or services and thus its profits." *Id*; *accord Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 225 (6th Cir. 2015) (collecting cases). In *Fischbein v. Olson Rsch. Grp., Inc.*, the Third Circuit further clarified this definition, holding that "any fax announcing the availability of opportunities to exchange goods or services for compensation is an advertisement within the meaning of the TCPA." 959 F.3d 559, 563 (3d Cir. 2020). The *Olson* Court further held that "a fax that is an element of a market research survey is just as commercial as a fax attempting to sell or buy goods or services to or from the recipient. Therefore, it is obvious that a fax seeking a response to a survey is seeking a service." *Id*. at 562. Consistent with that holding, the *Olson* Court found that faxes announcing "[a]n offer of payment in exchange for participation in a market survey is a commercial transaction, so a fax highlighting the availability of that transaction is an advertisement under the TCPA." *Id*. at 564. By way of further explanation, the *Olson* Court noted that "[i]t is an offer of payment to the recipients that transforms the solicitation of responses to market surveys into advertisements." *Id*. at 562.

Plaintiff contends that *Olsen* is controlling. Specifically, Plaintiff argues that the faxes he received announced an opportunity to participate in a research study by providing valuable patient information in exchange for payment in the form of "points toward the purchase of . . . gifts from [Defendant's] catalog[.]" Defendant counters that the offer of points exchangeable for "gifts" does not constitute an offer of payment under Third Circuit precedent because it is not an offer of monetary payment. Defendant's argument is, however, unpersuasive. There is no indication in *Olson* that the Third Circuit intended to limit its holding to monetary payments. To the contrary,

---

*Id*. at 563-64 (concluding that contrary decisions in other circuits improperly relied on Federal Communication Commission ("FCC") guidance for telephones, not fax machines, and that limiting solicitation by fax was unlikely to significantly hinder market research).

4

the *Olson* Court indicated that compensation/payment could consist of values other than money. *See id*. at 562 ("the offer itself, *in this case* money"; "commercial transactions . . . serve to transmit economic values such as materials, products, and services from those who want to exchange them *for another value, usually money*, to those who need them and are willing to pay a countervalue.") (emphasis added) (internal citations and quotations omitted). Indeed, the *Olson* Court referred to the third-party gift cards offered in another case as "compensation." *See id*. at 564 (discussing *Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Rsch. L.L.C.*, 444 F. Supp. 3d 775 (E.D. Mich. 2020)). As such, this Court declines to limit the application of *Olson* to only offers of monetary payment. Under the Third Circuit's definitions set forth in *Olsen*, this Court finds that points redeemable towards the purchase of items of value (such as gift cards, merchandise, event tickets, etc.) can and do constitute "offers of payment."

Defendant further argues that, even if an offer of payment does not have to be monetary, the faxes in this case cannot be considered advertisements because the points offered by Defendant can only be exchanged for third-party products, as opposed to Defendant's own products and, thus, "none of the catalog products are being offered for 'sale' by [Defendant]." [ECF 24-1 at p. 13]. This argument fails for two reasons. First, Defendant is confusing which property, goods, or services are the subject of the statute in this case. As the Third Circuit explained, "[i]n considering whether the sender of a fax has an intent to buy 'property, goods, or services' available commercially, the term used in the TCPA, 47 U.S.C. § 227(a)(5), means the property, goods or services being bought or sold, not the money offered to buy them." *Olson*, 959 F.3d at 562. Thus, the property, good, or service solicited in this case, as in *Olson*, is **the recipient's responses**, not the points or the products for which they can be redeemed. *See id.* (a "fax seeking a response to a survey is seeking a service."). Second, even if the products in the catalog were the "property,

goods, or services" referenced in the statute, the statute's plain language negates Defendant's argument. Section 227(a)(5) of the TCPA defines an advertisement as "any material advertising the commercial availability or quality of *any* property, goods, or services[.]" (emphasis added). Plainly, the statute does not impose any requirement that the property, goods, or services be the fax-sending party's own. To the contrary, the statute uses the all-encompassing word "any" to describe the scope of the property, goods, or services. Thus, it is irrelevant whether the products are "owned" by Defendant or branded as belonging to or being sold by Defendant, so long as they are advertised as "commercially available." For these reasons, this Court finds that the faxes in this case constitute advertisements under the TCPA and the applicable precedent in this Circuit.

Notwithstanding its clear applicability, Defendant contends that *Olson* was effectively overruled by a recent declaratory ruling issued by the FCC in *Acurian, Inc., Petition for Declaratory Ruling*, 36 FCC Rcd. 325 (2021) ("*Acurian*").[3] In response, Plaintiff argues, *inter alia*, that *Acurian* is not on point and, thus, does not displace the *Olson* holdings.[4] This Court agrees that *Acurian* does not displace the *Olson* holdings.

In *Acurian*, the FCC clarified that Acurian Inc.'s telephone calls to recruit participants for clinical trials run by third parties did not violate the TCPA. 36 FCC Rcd. at 325. Defendant's argument that *Acurian* implicitly rejected *Olson*'s holding is undermined by factual differences between the two cases. Compensation, the critical factor here and in *Olson*, was not a significant component of the *Acurian* decision. While the FCC made a single passing reference to reimbursement, *id*. at 329, it is clear from a review of Acurian's original petition that this reference

---

[3]   The FCC is the agency charged with administering the TCPA. 47 U.S.C. § 227(b)(2).

[4]   The parties also devote extensive analysis to the question of whether FCC orders, like *Acurian,* are binding on district courts under the Hobbs Act, 28 U.S.C. § 2342. Since this Court concludes that *Acurian* does not answer the question at hand, this issue need not be, and is not, decided here.

was to the potential for individuals to be reimbursed at the discretion of and by the third parties running the trials.  *Acurian, Inc., Petition for Declaratory Ruling Regarding Telephone Communications Seeking Candidates for Clinical Trials*, CG Docket No. 02-278 at 4-5 (filed Feb. 5, 2014) (explaining that those contacted may "end up receiving reimbursements for their costs in participating in the trial (e.g., travel costs) from the pharmaceutical companies that are running the trials.").  There is no indication that Acurian itself offered or even communicated an offer of payment like the one offered here and/or in *Olson*.  This distinction is especially compelling given the FCC's instruction that its decision should be construed narrowly.  *See* 36 FCC Rcd. at 328 n.25 ("Our clarification is limited to the calls Acurian describes.").

It is also significant that *Acurian* involves the **telephonic** rather than fax context.  While Defendant points to the portions of *Acurian* that discuss the term "advertisement" common to both telephones and faxes under the TCPA, Defendant does not limit its argument to those portions.  In contending that the FCC deemed compensation legally irrelevant, Defendant relies upon *Acurian*'s telephone-specific discussion of military and employment recruiting calls.  *See* 36 FCC Rcd. at 329 (analyzing such calls under the FCC definition of "telephone solicitation," not "advertisement").[5]  However, the Third Circuit has warned against conflating telemarketing calls with faxes due to their distinct issues and modes of regulation.  *See Olson*, 959 F.3d at 563 (citing H.R. Rep. No. 102-317, at *10) ("[M]arket surveys in the telemarketing by phone context . . . are significantly different than faxes, a material difference Congress itself recognized.").  Therefore, this Court finds that such reasoning does not alter the Third Circuit's decision in *Olson*.

---

[5] "Telephone solicitation" has its own definition under the FCC's rules.  *Acurian*, 36 FCC Rcd. at 329 n.33 (citing 47 CFR § 64.1200(f)(12), (14)) (defining telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]").

Defendant argues that *Acurian*'s focus on "offers ***to sell***" puts it at odds with *Olson,* thus, requiring a reconsideration of *Olson*.  Specifically, Defendant contends that *Acurian* implicitly rejects *Olson*'s holding that all faxes announcing opportunities to exchange goods or services for compensation, including offers ***to buy*** survey responses, are advertisements. Defendant's argument is unpersuasive given that, as described above, an offer of compensation like the one here and in *Olson* was simply not before the FCC.  Moreover, *Acurian* approvingly cites the interpretations of the statute's definition of "advertisement" by both the Sixth and Ninth Circuit Courts of Appeals, which expressly encompass goods or services available "to be ***bought*** or sold." *See Acurian*, 36 FCC Rcd. at 329-30 n.36 (emphasis added) (citing *Sandusky*, 788 F.3d at 222; *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 Fed. Appx. 640, 642 (9th Cir. 2012)).  The FCC's approval of these interpretations further suggests that its interpretation of "advertisement" is consistent with that of the Third Circuit in *Olson*.  As such, *Acurian* does not call into question the Third Circuit's decision.[6]

**CONCLUSION**

As *Acurian* does not alter the Third Circuit's analysis in *Olson*, this Court is bound by *Olson* and, therefore, finds that Plaintiff has alleged facts sufficient to state a plausible claim for relief.  For the foregoing reasons, Defendant's motion to dismiss is denied.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO,* U.S.D.C., J.

---

[6] Notably, in two decisions prior to *Olson*, the Third Circuit similarly emphasized offers to sell when evaluating putative advertisements under the TCPA.  *See NIA,* 767 F. App'x at 249 ("[F]or the sending of the fax to violate the TCPA it must directly or indirectly inform the recipient that the sender or some other entity sells something of value."); *Optum*, 925 F.3d at 133 ("As we explained in *NIA*, 'the fax must convey the impression . . . that a seller is trying to make a sale[.]'").  The *NIA* Court explicitly noted that it was not deciding the question of offers to buy.  767 F. App'x at 249 n.1.  The *Olson* Court subsequently explained that the same was true of *Optum*.  959 F.3d at 562.  ("[N]othing in *Optum* limits an advertisement to a fax that the sender intends will facilitate the sale of a service or product to the recipient.")