## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD E. FISCHBEIN, MD**, | ) | |
| individually and on behalf of all others | ) | |
| similarly-situated, | ) | |
| | ) | Civil Action No. 19-5365 |
| Plaintiff, | ) | |
| | ) | **Hon. Nitza I. Quiñones Alejandro** |
| v. | ) | |
| | ) | CLASS ACTION |
| **IQVIA, INC.**, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Plaintiff, Richard E. Fischbein, MD ("Plaintiff"), by counsel, respectfully moves

the Court to certify a class under Federal Rule of Civil Procedure 23(b)(3) defined as

follows:

> All persons: (1) who were sent one or more facsimiles between November
> 16, 2015, and January 10, 2019, inviting a healthcare professional to
> register or participate in the National Disease and Therapeutic Index or
> Channel Dynamics survey in exchange for points to be redeemed for
> rewards; (2) who never registered or participated in either survey; (3)
> for whom Defendant has produced no evidence of consent to be sent the
> invitation by facsimile transmission; and (4) who are listed in Exhibit B
> to the "(Supplemental Sur-Rebuttal) Expert Report of Lee Howard"
> dated February 8, 2024.[1]

In support of this motion, Plaintiff incorporates by reference his Memorandum

of Law, submitted herewith.

---

[1]     The report and its exhibit B thereto are attached as <u>Exhibit 1.</u>

Dated: March 15, 2024

Respectfully submitted,

By: /s/ Phillip A. Bock

Richard Shenkan (PA 79800)
**Shenkan Injury Lawyers, LLC**
P.O. Box 7255
New Castle, PA 16107
Phone: (412) 716-5800
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice)
Jonathan B. Piper (pro hac vice)
**Bock Hatch & Oppenheim, LLC**
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Phone: (312) 658-5501
service@classlawyers.com

Lawrence F. Stengel
**Saxton & Stump, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
Phone: (717) 556-1080
lfs@saxtonstump.com

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 15, 2024, he caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

By: /s/ Phillip A. Bock

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD E. FISCHBEIN, MD**, individually and on behalf of all others similarly-situated, | ) ) ) | |
| | ) | Civil Action No. 19-5365 |
| Plaintiff, | ) ) | **Hon. Nitza I. Quiñones Alejandro** |
| v. | ) ) | CLASS ACTION |
| **IQVIA, INC.**, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Richard Shenkan (PA 79800)
**Shenkan Injury Lawyers, LLC**
P.O. Box 7255
New Castle, PA 16107
Phone: (412) 716-5800
rshenkan@shenkanlaw.com

Lawrence F. Stengel
**Saxton & Stump, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
Phone: (717) 556-1080
lfs@saxtonstump.com

Phillip A. Bock (pro hac vice)
Jonathan B. Piper (pro hac vice)
**Bock Hatch & Oppenheim, LLC**
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Phone: (312) 658-5501
service@classlawyers.com

*Counsel for Plaintiff and the
Putative Class*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES ........................................................iii

MEMORANDUM ......................................................................... 1

I. Introduction. ................................................................ 2

II. Background. ................................................................. 3

    A. The parties. ........................................................ 3

    B. Defendant used "mass faxing" to solicit healthcare providers in bulk, attempting to find providers willing to gather and submit information for its NDTI or CD surveys in exchange for points redeemable for gift cards, tickets, and merchandise................................................... 4

        1. Defendant's faxes uniformly solicited healthcare providers to participate in its data collection business. ................... 4

        2. ██████████████████████████████ ..................... 5

        3. Defendant's Manila team tracked all communications with healthcare providers solicited to participate in the NDTI and CD surveys. ................................. 6

        4. ██████████████████████████████ ..................... 8

    C. Plaintiff has identified all persons to whom Defendant successfully sent NDTI or CD solicitations by fax after November 14, 2015, and for whom Defendant has no evidence of express consent to receive such solicitations............ 9

III. Argument. .................................................................... 11

    A. Applicable legal standards. ......................................... 11

    B. The weight of authority favors class certification in this action. ............................................................. 11

    C. Ascertainability and the proposed class definition. .................. 12

    D. The Rule 23 requirements are met. ............................... 14

        1. Numerosity....................................................... 14

        2. Commonality. ................................................... 15

i

3.    Typicality.........................................................................16

4.    Adequacy of representation.............................................17

5.    Predominance...................................................................19

6.    Superiority. .....................................................................22

IV.    Conclusion. ..........................................................................23

CERTIFICATE OF SERVICE. .....................................................25

EXHIBIT LIST. ............................................................................26

# TABLE OF AUTHORITIES

Page

**Cases**

*A & L Industries, Inc. v. P. Cippollini, Inc.*, Civ. Action No. 12-07598, 2013 WL 5503303 (D.N.J. Oct. 2, 2013), *reconsideration denied*, 2013 WL 6145766 (D.N.J. Nov. 21, 2013), *pet. for leave to appeal denied*, No. 13-8094 (3d Cir. Mar. 20, 2014) ........................................................................ 12, 14, 15, 17

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014) ........................................................................................................ 14

*Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, 2021 WL 3043422, No. 20 C 3326 (N.D. Ill. Feb. 17, 2021) ...................................... 20

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997) ................................. 22

*Byrd v. Aaron's, Inc.*, 784 F.3d 154 (3d Cir. 2015) ..................................... 12

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) .................................. 12

*Delandro v. County of Allegheny*, No. 06-927, 2011 WL 2039099 (W.D. Pa. May 24, 2011) ........................................................................................... 19

*Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170 (3d Cir. 2012) ...................... 18

*Fischbein v. Olson Research Grp., Inc.*, 959 F.3d 559 (3d Cir. 2020) .......................... 1

*Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047 (11th Cir. 2003) ........................................................................................................ 20

*Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020) ............................. 12

*Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014), *pet. for leave to appeal denied*, No. 14-8039 (3d Cir. May 8, 2014) ............................ passim

*Hinman v. M and M Rental Ctr., Inc.,* 545 F. Supp. 802 (N.D. Ill. 2008) ................ 15

*Hoxworth v. Blinder*, 980 F.2d 912 (3d Cir. 1992) ..................................... 18

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015) .......................... 13

*In re Cmty. Bank of N. Va.,* 418 F.3d 277 (3d Cir. 2005) .......................... 17

*In re Krebs*, 528 F.3d 82 (3d Cir. 2008) ...................................................... 1

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ................... 14

*Karns v. Shanahan*, 879 F.3d 504 (3d Cir. 2019) ........................................ 1

*Kaufman v. ACS Systems, Inc.*, 110 Cal. App. 4th 886 (Cal. Ct. App. 2003) ............. 2

*Kavu, Inc. v. Omnipak Corp., supra*, 246 F.R.D. 642 (W.D. Wash. 2007) ................ 15

*Krakauer v. Dish Network, LLC,* No. 1:14-CV-333, 2017 WL 3206324 (M.D.N.C. July 27, 2017) ........................................................................ 21

*Lap Distributors, Inc. v. Glob. Contact - Int'l Publ'g Corp.*, No. CV 19-6317 (RMB/KMW), 2020 WL 1616505 (D.N.J. Apr. 1, 2020) ............................................ 12

*Levine Hat Co. v. Innate Intelligence, LLC*, 538 F. Supp. 3d 915 (E.D. Mo. May 11, 2021) ........................................................................................................ 20

*Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012) .......................................... 22

*Mussat v. IQVIA Inc.*, No. 17 C 8841, 2020 WL 5994468 (N.D. Ill. Oct. 9, 2020) ................................................................................................................... 20

*Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) .......................................................... 15, 16

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) .................................................. 11

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992 (6th Cir. 2016) ............................................................................................................ 12, 13

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) .............................................. 14, 16

*United States v. Tann*, 577 F.3d 533 (3d Cir. 2009) ................................................ 1

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) .............................................. 15

## Statutes

47 U.S.C. § 227 ........................................................................................................ 1

47 U.S.C. § 227(a)(4) ............................................................................................... 2

47 U.S.C. § 227(b)(1)(C) .......................................................................................... 2

47 U.S.C. § 227(b)(3)(B) .......................................................................................... 2

## Other Authorities

*In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al.*, 34 FCC Rcd 11950 (F.C.C. Dec. 9, 2019) ........................................... 20

*In re WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd 8620 (F.C.C. Aug. 28, 2015) .................................................................................. 20

## Rules

Federal Rule of Civil Procedure 23(a) ..................................................................... 11

Federal Rule of Civil Procedure 23(a)(1) ................................................................ 14

Federal Rule of Civil Procedure 23(a)(2) ............................................................ 15, 16

Federal Rule of Civil Procedure 23(a)(3) ............................................................ 16, 17

Federal Rule of Civil Procedure 23(a)(4) ............................................................ 17, 18

Federal Rule of Civil Procedure 23(b). ..................................................................... 11

Federal Rule of Civil Procedure 23(g) ..................................................................... 19

Third Circuit Internal Operating Procedure 9.1 ......................................................... 1

**Regulations**

45 C.F.R. § 164.312(a)......................................................................................................... 3

## MEMORANDUM

Plaintiff, Richard E. Fischbein, MD ("Plaintiff"), alleges that defendant, IQVIA, Inc. ("Defendant"),[2] violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending form advertisements in fax broadcasts to Plaintiff and a class of more than 25,000 other healthcare providers more than 40,000 times without prior express invitation or permission. Defendant's faxes uniformly solicited healthcare providers to register and participate in its "National Disease and Therapeutic Index" ("NDTI") or "Channel Dynamics" ("CD") survey in exchange for points redeemable for gift cards and merchandise in Defendant's rewards program.

In *Fischbein v. Olson Research Grp., Inc.*, 959 F.3d 559 (3d Cir. 2020), the Third Circuit held that faxes soliciting participation in exchange for payment are "advertisements" as defined by the TCPA and violate the Act if sent without the targeted person's "prior express invitation or permission."[3] Each violation of the

---

[2]     IQVIA, Inc. was previously known as IMS Health. Cabrey (Exhibit 2), pp. 13-14; Foster (Exhibit3), pp. 9-13. IMS Health maintained the NDTI and CD survey programs. Cabrey, pp. 13-14, 27-28. Foster, pp. 33-36. For ease of reference and to avoid confusion, these entities will be referred to collectively as "Defendant." The claims of the proposed class are distinct and separate from those alleged in *Lyngaas v. IQVIA, Inc.*, No. 20-2370 (E.D. Pa.), because a different unit of IQVIA sent the NDTI and CD solicitations at issue here.

[3]     Therefore, any argument that Defendant's NDTI and CD faxes are not "advertisements" may only be reviewed by the United States Supreme Court or the Third Circuit sitting *en banc* and overruling *Olson. See, e.g., Karns v. Shanahan*, 879 F.3d 504, 514 (3d Cir. 2019), (citing *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009)); *In re Krebs*, 528 F.3d 82, 84 (3d Cir. 2008); Third Circuit Internal Operating Procedure 9.1. In any event this issue is common to the class and so is no barrier to class certification. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 681, 684 (7th Cir. 2013).

TCPA supports a private cause of action for a minimum of $500 in statutory damages. 47 U.S.C. § 227(b)(3)(B).

Plaintiff seeks to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3) defined as follows:

> All persons: (1) who were sent one or more facsimiles between November 16, 2015, and January 10, 2019, inviting a healthcare professional to register or participate in the National Disease and Therapeutic Index or Channel Dynamics survey in exchange for points to be redeemed for rewards; (2) who never registered or participated in either survey; (3) for whom Defendant has produced no evidence of consent to be sent the invitation by facsimile transmission; and (4) who are listed in Exhibit B to the "(Supplemental Sur-Rebuttal) Expert Report of Lee Howard" dated February 8, 2024.[4]

## I.  Introduction.

The Telephone Consumer Protection Act ("TCPA") forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4). Such "junk" faxing has been called "advertising by theft." *Kaufman v. ACS Systems, Inc.*, 110 Cal. App. 4th 886, 893 (Cal. Ct. App. 2003).

Communication by fax remains dominant in the healthcare arena because, *inter alia*, the security regulations under the Health Insurance Portability and Accountability Act ("HIPAA") do not permit communication of personal health

---

[4]      The report and its exhibit B are attached as <u>Exhibit 1</u>.

information ("PHI") on the open networks utilized by more modern forms of electronic communication. 45 C.F.R. § 164.312(a), (c)(1), (e)(1). Because they are known to continue using fax machines, healthcare providers like Plaintiff are especially vulnerable to unsolicited facsimile advertisements. *Olson*, 959 F.3d at 564 ("Although faxes have become almost a relic of the past for most consumers, due to patient privacy laws, healthcare professionals still rely on faxes for certain communications. This, of course, renders them a very captive and easily identifiable audience, as one of the few subgroups in the population that still commonly employs the use of a fax machine.").

In mass faxing cases like this one, "[c]lass certification is normal in litigation under § 227 [of the TCPA] because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 681, 684 (7th Cir. 2013); *see also City Select Auto Sales, Inc. v. BMW of N. Am., Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).

## II.    Background.

### A.    The parties.

Defendant describes itself as "a leading global provider of advanced analytics, technology solutions and clinical research services to the life sciences industry dedicated to creating intelligent connections that deliver unique innovations and actionable insights." https://www.iqvia.com/about-us (Exhibit 4).[5] One aspect of

---

[5]    Exhibits attached the to this brief are underlined and the entire word "Exhibit" is spelled out. References to "Ex." Are references to exhibits within materials attached as Exhibits to this brief.

Defendant's business is to gather data from healthcare providers and compile it into databases sold or licensed to Defendant's clients. Foster, pp. 25-26.

Plaintiff is a psychiatrist who practices in Wilkes-Barre, Pennsylvania. Fischbein, pp. 43-44. (Exhibit 5).

> **B.  Defendant used "mass faxing" to solicit healthcare providers in bulk, attempting to find providers willing to gather and submit information for its NDTI or CD surveys in exchange for points redeemable for gift cards, tickets, and merchandise.**
>
> > **1.  Defendant's faxes uniformly solicited healthcare providers to participate in its data collection business.**

Chris Foster is Defendant's director of information technology. Foster, p. 9. Foster has worked for Defendant for more than 17 years. Foster, p. 10. Cathy Cabrey manages the CD program and previously handled the NDTI program. Cabrey, pp. 17-18. Cabrey has worked for Defendant for more than 30 years. Cabrey, p. 13.

Defendant recruited healthcare providers to provide practice data to be compiled and sold or licensed to healthcare companies and others. Foster, pp. 20-21, 22-23, 25, 26-27. As part of its recruitment efforts, Defendant regularly and periodically sent form faxes soliciting participation in its NDTI and CD surveys in exchange for points redeemable for merchandise, tickets, and gift cards. Foster, p. 52-54. ██████████████████████████████████████████████████

██████████████████████████████ De Zuniga (Exhibit 6), pp. 99-100.

The templates used for the faxes contained uniform content and permitted the insertion of the targeted healthcare provider's name and the identification number

Defendant assigned to them (*e.g.*, an "IMS number").[6] Cabrey, pp. 44-45, Ex. 3; De

Zuniga, pp. 53-54, 56, Exs. 8, 10. ███████████████████████████

██████ De Zuniga, pp. 56-59, Exs. 10-11.

███████████████████████████████████████

████████████████████████████████ Foster, p. 30. ███████

██████████████████████████████████████ De

Zuniga, pp. 11, 12, 14-15.

**2.** ████████████████████████████████

█████████████████████████████ Cabrey, p. 106;

Foster p. 74; De Zuniga, p. 20.[7] █████████████████████████

█████████████████ De Zuniga, pp. 33-34, 59-60, 84-85, Ex. 12;

Francisco (<u>Exhibit 7</u>), pp. 26-27, 28-29, 32-33. ████████████████

████████████ De Zuniga, p. 68, 135.

███████████████████████████████████████

██████████████████████ De Zuniga, pp. 42-43, Ex. 12,

pp. 18-20. ████████████████████████████████

███████████████████████████████████████



---

[6] ███████████████████████████████████████
██████████████████████████████ Foster, p. 81.

[7]     IQVIA Inc.'s Objections and Responses to Plaintiff's Written Deposition of
IQVIA's 30(b)(6) Witness Pursuant to Fed. R. Civ. P. 31 ("30(b)(6) Response") (<u>Exhibit 8</u>), ¶ 1.

████████████████████████████ De Zuniga, pp., 63-64, Ex. 16; Francisco, p. 38. Defendant produced the emails it could locate. 30(b)(6) Response, ¶¶ 6, 9, 10.

Defendant produced the data and later authenticated and identified it as contained in a spreadsheet labelled "IQVIA1014384," which also included other data from other spreadsheets created from Defendant's business records. *Id.* at ¶ 9. Each ████████ transmission on the list was sent to a unique ten-digit telephone number, which necessarily means it traversed the Public Switched Telephone Network ("PSTN"). (Supplemental Sur-Rebuttal) Expert Report of Lee Howard, Appendix 2, Ex. B; Coombs (Exhibit 9), p. 48, (Supplemental Rebuttal) Expert Report of Lee Howard (Exhibit 10), ¶¶ 13-21.

### 3. Defendant's Manila team tracked all communications with healthcare providers solicited to participate in the NDTI and CD surveys.

████████████████████████████████████████████████

████████████████████████████████████████████████

Mateo (Exhibit 11), pp. 19-20. ████████████████████

████████████████████████████████████████████████

████████████████████████████████ Mateo, pp. 20-23, 27-33. ████

████████████████████████████████ Mateo, p. 52-53, Ex. 1. ████

████████████████████████████████ Mateo, p. 67. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████ De Zuniga, pp 80-81. ████████████████████████████████████

████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ Foster

Dep. 121:1-14; De Zuniga Dep. 91:13-92:4, 105:8-14; De Zuniga Dep. Exs. 29 (██

████████████████████████████████████████████████████████

████████████████████████████████████████ ), 40 (████████████████

██████████████████████████████████████ ). █████████████

████████████████████████████████████████████████████████

████ *Florence Mussat, M.D., S.C. v. IQVIA Holdings, Inc. et al.*, No. 1:17-cv-08841

(N.D. Ill. filed Dec. 8, 2017).

███████████████████████████████████████████████

██████████████████████████████████████████ Mateo, p. 66, 68.

████████████████████████████████████████████████████████

████████████ De Zuniga, pp. 37-38; Mateo, pp. 68-70, 124. █████████

████████████████████████████████████████████████████████

█████ De Zuniga, p. 84, Ex. 27D; Francisco, pp. 35-36. █████████████

██████████████████████████████████████ Francisco, p. 52; De Zuniga, pp.

39-40. ████████████████████████████████████████████

█████ De Zuniga, p. 84, Ex. 27D, p. 25; Mateo, pp. 124.



█████████████ De Zuniga, pp. 39-40; Mateo, pp. 89, 98, 107, 129. ████████████ De Zuniga, pp. 49-41; Mateo, pp. 89, 107, 129. ████████████[8].

30(b)(6) Response at ¶ 10.

**4.** ████████████

Coombs, p. 29. Thomas Coombs has worked for Xmedius Solutions Group for 16 years. Coombs, pp. 7-8. He is director of sales and familiar with how Xmedius faxing software works. Coombs, pp. 8, 12.

Xmedius uses the standard T.38 and T.30 protocols for fax transmissions. Coombs, pp. 12, 20-21, 43. Consequently, the software records a successful fax transmission only if it receives the message confirmation flag ("MCF") from the receiving machine confirming complete receipt of every page. Coombs, pp. 18-20, 53, 59. Xmedius records a successful transmission as "sent." Coombs, p. 60. Xmedius would use the term "sending" to refer to an attempt to send a fax where the targeted fax number had not yet returned an MCF signal. Coombs, p. 60. If the user configures

---

[8] ████████████ 30(b)(6) Response, ¶ 10.

it to do so, Xmedius will automatically generate an email showing the results of each transmission. Coombs, p. 20.

Xmedius is reliable and annually certified as such by laboratory testing by Cisco Labs and Avaya DevConnect. Coombs, pp. 25-27. Coombs has never been alerted to reports of false transmission confirmations by Xmedius. Coombs, p. 39.

Xmedius software connects to the PSTN. Coombs, pp. 36, 48, Ex. 7, p. 2. "Any fax would come out or go in over the PSTN." Coombs, p. 48.

**C.     Plaintiff has identified all persons to whom Defendant successfully sent NDTI or CD solicitations by fax after November 14, 2015, and for whom Defendant has no evidence of express consent to receive such solicitations.**



30(b)(6) Response, ¶¶ 6, 9, 10.

30(b)(6) Response, ¶ 9.

30(b)(6) Response, ¶ 10.

30(b)(6) Response, ¶ 10; Oppenheim Dec. (Exhibit 12), ¶ 14.

30(b)(6) Response, ¶ 10.

Plaintiff's expert Lee Howard has more than 20 years of experience working with fax technology. Howard Report (Exhibit 13), ¶ 3. ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████     Howard Supplemental Rebuttal Report, ¶ 4(k). Howard removed all transmissions that were not recorded as successful. (Supplemental Sur-Rebuttal) Expert Report of Lee Howard, ¶ 6(2). Next, Howard removed all transmissions sent to people Defendant identified as participating in the NDTI or CD survey (*i.e.*, those persons in Defendant's "Point Balance Reports" and participant lists). *Id.* at ¶ 6(3). ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████. *Id.* at ¶ 6(4).

Howard provided the resulting list to David Oppenheim, one of Plaintiff's attorneys, Oppenheim Dec., ¶¶ 8, 30-34. ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████     Oppenheim Dec., ¶¶ 37-41. Howard removed the flagged transmissions, resulting in a list of 48,175 fax transmissions to 25,594 distinct fax numbers. (Supplemental Sur-Rebuttal) Expert Report of Lee Howard, ¶ 7(5)-(6), Ex. B.

**III.   Argument.**

   **A.   Applicable legal standards.**

To achieve class certification, a plaintiff must demonstrate that Rule 23(a)'s four prerequisites are satisfied: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to satisfying the requirements of Rule 23(a), the plaintiff must also satisfy one of the subsections of Rule 23(b). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

   **B.   The weight of authority favors class certification in this action.**

Class actions promote judicial economy by aggregating small claims into one lawsuit. "Class actions … permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808-809 (1985). Class certification is "normal" under the TCPA because the main questions surrounding liability are common to all members. *Turza, supra*, 728 F.3d at 684 ("Class certification is normal in litigation under § 227, because the main

questions, such as whether a given fax is an advertisement, are common to all recipients").

Multiple circuit courts have affirmed class certification in TCPA cases. *See*, *e.g.*, *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (6th Cir. 2016) ("*Medtox*"); *Turza, supra,* 728 F.3d at 684; *see also City Select*, *supra*, 867 F.3d 434 (vacating district court order denying class certification of TCPA junk fax claim). Courts around the country, including district courts in this circuit, have recognized that class actions are the superior, and most efficient, method of adjudicating TCPA violations. *Lap Distributors, Inc. v. Glob. Contact - Int'l Publ'g Corp.*, No. CV 19-6317 (RMB/KMW), 2020 WL 1616505, at *5 (D.N.J. Apr. 1, 2020); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014), *pet. for leave to appeal denied*, No. 14-8039 (3d Cir. May 8, 2014); *A & L Industries, Inc. v. P. Cippollini, Inc.*, Civ. Action No. 12-07598, 2013 WL 5503303 (D.N.J. Oct. 2, 2013), *reconsideration denied*, 2013 WL 6145766 (D.N.J. Nov. 21, 2013), *pet. for leave to appeal denied*, No. 13-8094 (3d Cir. Mar. 20, 2014); *City Select,* 296 F.R.D. at 313-15.

## C.   Ascertainability and the proposed class definition.

A class must be "ascertainable," but a plaintiff need not "be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members can be identified.'" *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) (quoting *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (emphasis omitted) (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)). To satisfy this standard, a plaintiff must show that "(1) the class is 'defined with

reference to objective criteria,' and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *City Select*, *supra*, 867 F.3d at 439.

Here, Plaintiff proposes the following definition:

> All persons: (1) who were sent one or more facsimiles between November 16, 2015, and January 10, 2019, inviting a healthcare professional to register or participate in the National Disease and Therapeutic Index or Channel Dynamics survey in exchange for points to be redeemed for rewards; (2) who never registered or participated in either survey; (3) for whom Defendant has produced no evidence of consent to be sent the invitation by facsimile transmission; and (4) who are listed in Exhibit B to the "(Supplemental Sur-Rebuttal) Expert Report of Lee Howard" dated February 8, 2024.[9]

This proposed class is ascertainable. Plaintiff has identified each class member by fax number and other identifying information pulled from Defendant's databases.[10] Oppenheim Dec., ¶¶ 42-48; (Supplemental Sur-Rebuttal) Expert Report of Lee Howard, ¶ 6, Ex. B. Plaintiff's list easily satisfies the Third Circuit's ascertainability requirements because it identifies each class member in detail. *City Select,* 867 F.3d at 438-43. *See also Medtox*, supra, 821 F.3d at 997-98 ("whether a class member received the unsolicited fax" was a common question of fact that predominated because fax logs existed to identify recipients and "fax logs showing the numbers that received each fax are objective criteria that make the recipient [class member] clearly ascertainable"); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 632 (6th Cir. 2015)

---

[9]    The report and exhibit B thereto are attached as <u>Exhibit 1.</u>

[10]    A handful of the fax transmissions were not addressed to named providers. For those, the class list contains only the fax number to which the fax was successfully sent.

(fax logs are sufficient to establish the faxes were received without requiring that anybody remember or produce copies of the faxes they received); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014) (fax transmission logs identifying each successful recipient by fax number "are objective data satisfying the ascertainability requirement"); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 685 (7th Cir. 2013) (fax logs listing the fax numbers of each individual who received the faxes obviated any "need for recipient-by-recipient adjudication"); *City Select,* 296 F.R.D. at 309 ("Plaintiff has produced evidence that the fax advertisements were successfully sent…. The TCPA 'does not specifically require proof of receipt.'").

### D.   The Rule 23 requirements are met.

#### 1.   Numerosity.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the proposed class numbers over 25,000, making individual joinder infeasible. (Supplemental Sur-Rebuttal) Expert Report of Lee Howard, ¶ 6, Ex. B. Thus, the "numerosity" requirement is easily met. *See David Randall*, 296 F.R.D. at 313; *Hawk Valley*, 301 F.R.D. at 182; *A&L Industries, Inc. v. P. Cipollini, Inc.*, No. 12-07598 2013 WL 5503303 at *2 (D.N.J. Nov. 21, 2013).

14

### 2.   Commonality.

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "commonality" requirement does not mandate "that all putative class members share identical claims, and that factual difference among the claims of the putative class members do not defeat certification." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Weiss v. York Hospital*, 745 F.2d 786, 808-809 (3d Cir. 1984). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id*. "Because the requirement may be satisfied by a single common issue, it is easily met...." *Id*.

Here, Defendant's common conduct toward Plaintiff and the other fax targets makes the case appropriate for class certification. *See, e.g., David Randall*, 296 F.R.D. at 314, 322 (identifying six common questions); *Hawk Valley*, 301 F.R.D. at 182 (commonality satisfied in TCPA junk fax action where defendant engaged in standardized conduct towards members of the proposed class); *A&L Industries*, 2013 WL 5503303 at *3 (same).[11]

By mass faxing its paid survey solicitations to more than 25,000 healthcare providers, Defendant engaged in standardized conduct involving a common nucleus of operative facts. The controversy centers around common fact questions about Defendant's faxing, and common legal questions under the TCPA, such as: whether

---

[11]    *See also Hinman v. M and M Rental Ctr., Inc.,* 545 F. Supp. 802, 806-807 (N.D. Ill. 2008) (under circumstances where defendant's fax campaigns were transmitted *en masse* based on a "leads" list, the question of express permission may be understood as a common question); *Kavu, Inc. v. Omnipak Corp., supra*, 246 F.R.D. 642, 646 (W.D. Wash. 2007) (same).

Defendant's faxes soliciting participation in exchange for points redeemable for merchandise, tickets, and gift cards are "advertisements;" whether Defendant violated the TCPA by sending advertisements by fax without first obtaining prior express invitation or permission to do so; whether the Court should award statutory damages to Plaintiff and the other putative class members; whether Defendant's actions were "knowing or willful" under the TCPA and, if so, whether the Court should treble the statutory damages; whether the faxes included compliant opt-out notices; and whether the Court should enjoin Defendant from future violation of the TCPA.

Resolution of these issues will affect all class members. Therefore, the "commonality" requirement of Rule 23(a)(2) is satisfied.

### 3.   Typicality.

Rule 23(a)'s third requirement is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart*, *supra*, 275 F.3d at 227.

The typicality requirement does not require "that all putative class members share identical claims;" all that matters is "that factual differences among the claims of the putative class members do not defeat certification." *Neal*, *supra*, 43 F.3d at 56. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class

16

members, and if it is based on the same legal theory." *Id*. at 58. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id*.

Here, class members all received Defendant's faxes soliciting participation in Defendant's NDTI or CD survey in exchange for points redeemable for merchandise, tickets, and gift cards. Each class member's claim is based on the same legal theory as Plaintiff's. *See David Randall*, 296 F.R.D. at 314 (typicality satisfied where claims of absent class members, and the evidence relating to such claims, are the same as the named plaintiff); *Hawk Valley*, 301 F.R.D. at 183 (typicality satisfied where the claims of absent class members are the same as the claims of the named plaintiff and are based on the same incident); *A&L Industries*, 2013 WL 5503303 at *2 (same). To the extent that Defendant asserts that class members expressly invited or permitted its fax solicitations, that is a common defense because Plaintiff's class list includes only claims for faxes sent before Defendant's records show any possible indicia of consent. For the healthcare providers in the class, Defendant has failed to provide any evidence that it had prior express invitation or permission before sending the faxes. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of representation.

### a. Rule 23(a)(4)'s adequacy requirement.

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Fed. R. Civ. P. 23(a)(4); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 303 (3d Cir. 2005). "[A]dequate

representation depends on two factors: (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth v. Blinder*, 980 F.2d 912, 923 (3d Cir. 1992); *Dewey v. Volkswagen Aktiengesellschaft,* 681 F.3d 170, 181 (3d Cir. 2012) (Rule 23(a)(4) tests "the experience and performance of class counsel").

Here, Plaintiff and the other class members have common claims about Defendant's fax advertisements. Plaintiff's interests do not conflict with the other class members' interests. Plaintiff understands his obligations and the nature of the claims. Fischbein, pp. 292-300. Plaintiff has demonstrated his commitment to enforcing the TCPA and representing the class. *See, e.g.*, *Fischbein*, 959 F.3d 559. Plaintiff responded to extensive written discovery and permitted Defendant to perform an onsite inspection of his fax machine. Defendant deposed Plaintiff, his assistant, his wife, and his former assistant. Thus, Rule 23(a)(4)'s "adequacy" requirement is satisfied as to Plaintiff.

> **b.   Rule 23's class counsel adequacy requirement.**

Plaintiff's counsel are experienced class action attorneys and adequate counsel for the class. *See* Plaintiff's counsel firm resumes, attached as <u>Exhibit 14</u>. They have been appointed as lead or co-lead counsel in many class actions, including but not limited to TCPA cases. *Id*. They have been litigating TCPA claims since 2003 and have prosecuted dozens of such cases to successful resolution, including class-wide settlements. *Id*. Plaintiff's counsel will continue to commit adequate resources to

ensure that the class is properly represented in this case. *See, e.g.*, *Hawk Valley*, 301 F.R.D. at 183 (finding Plaintiff's counsel adequate in TCPA junk fax class action); Exhibit 14 (collecting cases in which courts have found Plaintiff's counsel adequate under Rule 23 (g)). Plaintiff's counsel satisfies Rule 23's adequacy requirement.

### 5. Predominance.

"Predominance is found when common questions represent a significant part of the case and can be resolved for all members of the class in a single adjudication." *Delandro v. County of Allegheny*, No. 06-927, 2011 WL 2039099 at *9 (W.D. Pa. May 24, 2011). "To establish predominance, Plaintiff must show by a preponderance of the evidence that the elements of their claim can be proven by evidence common to all in their class." *Id*. Here, Plaintiff's claim is identical to the claims of the other class members.

Because each class member is entitled to statutory damages in the same amount, there will be no need to conduct an individualized inquiry on the question of damages. *See Hawk Valley*, 301 F.R.D. at 185-87 (predominance satisfied where "'[p]laintiff's claims are identical to the claims of the other class members' and '[] each class member is entitled to statutory damages in the same amount'"); *David Randall*, 296 F.R.D. at 314-15 ("common questions predominate" where defendant engaged in a mass fax campaign because the "legal claims are all the same, and the evidence, [hard drive containing transmission logs], is the same"). Thus, the predominance requirement is satisfied.

a.   **The possibility that some class members may have subscribed to a cloud-based fax service does not show common issues do not predominate.**

Defendant will probably argue a recent opinion by the FCC's Consumer and Governmental Affairs Bureau questions whether faxes received by "online fax services" are actionable under the TCPA. *In re Amerifactors Financial Group, LLC Petition for Expedited Declaratory Ruling et al.*, 34 FCC Rcd 11950 (F.C.C. Dec. 9, 2019). Here, it is beyond doubt that Plaintiff received the faxes on a stand-alone fax machine in his office, so this has no bearing on Plaintiff's claims. Fischbein, pp. 35-37, 87, Ex. 6.

In addition, *Amerifactors* was not a decision by the Commission. It has been appealed to the Commission and appears to contradict an earlier decision by the same bureau, so its authority is in question. *See In re WestFax, Inc. Petition for Consideration & Clarification,* 30 FCC Rcd 8620 (F.C.C. Aug. 28, 2015). As such, it is a subordinate order and should not be applied here. *Mussat v. IQVIA Inc.*, No. 17 C 8841, 2020 WL 5994468 at *3 (N.D. Ill. Oct. 9, 2020) ("once an application for review [to the full FCC] is filed, 'the subordinate unit's order is non-final.'") (quoting *Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc*., 346 F.3d 1047, 1050 (11th Cir. 2003)); *Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, 2021 WL 3043422, *1, No. 20 C 3326 (N.D. Ill. Feb. 17, 2021) ("the Bureau's decision flies in the face of years of precedent, established by the FCC and affirmed by the Seventh Circuit, that the TCPA covers faxes sent to computers in addition to traditional fax machines"); *see also Levine Hat Co. v. Innate Intelligence, LLC*, 538 F. Supp. 3d 915, 926 (E.D. Mo. May 11, 2021) ("The Amerifactors decision was issued by the Consumer &

20

Governmental Affairs Bureau and does not appear to constitute a 'final order' of the FCC under the Hobbs Act.") Finally, the Sixth Circuit has held that, in addition to being contrary to the plain language of the TCPA and prior, final, FCC orders, *Amerifactors* should not be given retroactive effect, so it would not apply to faxes—like all those at issue in this case—sent before December 9, 2019. *Lyngaas*, *supra*, 992 F.3d at 428.

In any event, any potential issue raised by consideration of *Amerifactors* could be resolved by a simple verification process if Plaintiff prevails on the merits, so the issue does not prevent class certification. *See, e.g., BMW Bank*, 867 F.3d at 441-42 (allowing claims process to determine receipt of faxes); *Krakauer v. Dish Network, LLC,* No. 1:14-CV-333, 2017 WL 3206324, at *5 (M.D.N.C. July 27, 2017) (describing claims process to specifically identify certain class members after resolution on the merits)*; City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 313-314 (D.N.J. 2013) (same).

### b.   There are no individual issues regarding express invitation or permission.

As discussed, the proposed class includes 48,175 transmissions to 25,594 fax numbers in the Howard List. None were sent to anyone who ever participated in Defendant's surveys. Only 8,837 of the transmissions were sent to 4,903 fax numbers correlated with providers whose IMS numbers (Defendant's internal identifier) are included in the DSS database (including Plaintiff). Oppenheim Decl., ¶ 42. These notes exclusively detail failed attempts to connect, failures to reach the intended person, declinations, and conversations after the faxes sent to the proposed class

21

members. *Id.* at ¶¶ 42-48. The remaining 39,338 faxes were sent to persons with no contact with Defendant. As such, there are no individualized permission issues.

### 6.    Superiority.

Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. Certifying a class is the superior way when the "class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App. at 697). Superiority factors considered by courts in this District include:

> the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against the class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.

*Hawk Valley*, 301 F.R.D. at 190-91.

These factors weigh in favor of certification in TCPA junk fax actions where there is no evidence of other litigation by class members, because the relatively small statutory damages available make it "unlikely that the class members have an interest in individually controlling the prosecution of separate actions," meaning "thousands of plaintiffs" "might not otherwise seek or obtain relief absent a class action," and because the "court will only need to apply federal law, not multiple state laws." *Id.*; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 751 (2012) (holding that the TCPA provides for federal causes of action); *David Randall*, 296 F.R.D. at

312 (collecting cases decided post-*Mims* and concluding that "federal law governs in federal TCPA actions, particularly on the class certification question").

Here, as in *Hawk Valley*, there is no other ongoing litigation concerning Defendant's NDTI and CD solicitation faxes. Moreover, this case presents a situation in which class members are unlikely to have an interest in individually controlling the prosecution of separate actions, and, absent a class action, class members will not otherwise seek or obtain relief. With TCPA damages of $500 per fax, and no fee shifting, individual cases would have a negative value for any plaintiff choosing to pursue his own claim. Therefore, a class action is the *best* available method for fairly and efficiently adjudicating this case about Defendant's fax ads, and it is superior.

## IV.   Conclusion.

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for class certification, certify this action as a class action, appoint Plaintiff as class representative, appoint Plaintiff's attorneys as class counsel, and award any other relief the Court deems just under the circumstances.

Dated: March 15, 2024

Richard Shenkan (PA 79800)
**Shenkan Injury Lawyers, LLC**
P.O. Box 7255
New Castle, PA 16107
(412) 716-5800
rshenkan@shenkanlaw.com

Lawrence F. Stengel
**Saxton & Stump, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
(717) 556-1080
lfs@saxtonstump.com

Respectfully submitted,

By: /s/ Phillip A. Bock

Phillip A. Bock (pro hac vice)
Jonathan B. Piper (pro hac vice)
**Bock Hatch & Oppenheim, LLC**
203 N. La Salle St. Ste. 2100
Chicago, IL 60601
(312) 658-5500
service@classlawyers.com

***Counsel for Plaintiff and the Putative Class***

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on March 15, 2023, he caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

By: /s/ Phillip A. Bock

**EXHIBIT LIST**

| Tab | Exhibit | Filed publicly or submitted under seal? |
|---|---|---|
| 1 | (Supplemental Sur-Rebuttal) Expert Report of Lee Howard (2/8/2024), with Appendices and Exhibits | Submitted under seal |
| 2 | Deposition Transcript of Cathleen Cabrey (4/20/2023), with Exhibits | Submitted under seal |
| 3 | Deposition Transcript of Chris Foster (4/18/2023), with Exhibits | Submitted under seal |
| 4 | IQVIA website address "about us" | Filed publicly |
| 5 | Deposition Transcript of Richard Fischbein, M.D. (3/15/2023), with Exhibits | Submitted under seal |
| 6 | Deposition Transcript of Josefina De Zuniga (5/5/2023), with Exhibits | Submitted under seal |
| 7 | Deposition Transcript of Maribeth Francisco (5/1/2023), with Exhibits | Submitted under seal |
| 8 | IQVIA Inc.'s Objections and Responses to Plaintiff's Written Deposition of IQVIA's 30(b)(6) Witness Pursuant to Fed. R. Civ. P. 31 | Submitted under seal |
| 9 | Deposition Transcript of Tom Coombs (7/6/2023), with Exhibits | Redacted transcript filed publicly, unredacted transcript submitted under seal; exhibits 12 and 13 submitted under seal |
| 10 | (Supplemental Rebuttal) Expert Report of Lee Howard (12/1/2023), with Appendices and Exhibits | Submitted under seal |
| 11 | Deposition Transcript of Louie Mateo (5/3/2023), with Exhibits | Submitted under seal |

| 12 | Declaration of David M. Oppenheim (3/15/2024), with Exhibits | Submitted under seal |
|---|---|---|
| 13 | Expert Report of Lee Howard (6/6/2023), with Appendices and Exhibits | Submitted under seal |
| 14 | Firm Resume | Filed publicly |