## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**RICHARD E. FISCHBEIN, MD**,
individually and on behalf of all others
similarly-situated,

      Plaintiff,

   v.

**IQVIA, INC.**,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 19-5365

**Hon. Nitza I. Quiñones Alejandro**

CLASS ACTION


## PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING CLASS CERTIFICATION OR, IN THE ALTERNATIVE, TO CERTIFY A MORE NARROWLY-DEFINED CLASS UNDER RULE 23(B)(3) OR AN ISSUES CLASS UNDER RULE 23(C)(4)

Richard Shenkan (PA 79800)
**Shenkan Injury Lawyers, LLC**
P.O. Box 7255
New Castle, PA 16107
(412) 716-5800
rshenkan@shenkanlaw.com

Lawrence F. Stengel
**Saxton & Stump, LLC**
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
(717) 556-1080
lfs@saxtonstump.com

Phillip A. Bock (pro hac vice)
**Bock Hatch & Oppenheim, LLC**
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
(312) 658-5500
service@classlawyers.com

*Counsel for Plaintiff*
*and the Putative Class*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... iii

MEMORANDUM ...................................................................................... 1

I.     Introduction. ................................................................................. 1

II.    Argument ...................................................................................... 3

     A.     The Court should follow the reasoning of the Sixth Circuit in *Lyngaas*, rather than the Fourth Circuit's reasoning in *Career Counseling.* ................................................................. 3

          1.     Courts are divided on whether the TCPA covers faxes received via an online fax service. ..................................... 3

          2.     The Sixth Circuit's interpretation is textually and technologically sound. ........................................................... 5

          3.     Federal case law supports a broad reading of the TCPA. . 6

          4.     The FCC's 2003 rulemaking supports TCPA coverage of online fax services. .............................................................. 8

          5.     The statutory definition of "Telephone Facsimile Machine" encompasses multifunction setups. ................... 9

          6.     At a minimum, the Sixth Circuit's interpretation is plausible and should control under remedial statutory principles. ........................................................................ 11

     B.     Even if the TCPA excludes users of online fax services, the class remains ascertainable under *City Select*. ............................ 11

          1.     The Court misapplied *City Select* by requiring classwide proof of fax equipment. ...................................... 11

          2.     The Howard Report defines a closed set of class members and the class definition can be narrowed by expressly excluding any member who used an online fax service... 13

          3.     Verifying fax equipment post-trial is straightforward and feasible. ............................................................................ 14

          4.     The Court ignored the core holding of *City Select*. .......... 15

     C.     Narrowing the class definition to exclude people who used online fax services eliminates the Court's predominance concern. ................................................................................. 17

      D.     Finally, if the Court denies certification of a Rule 23(b)(3) class, then Plaintiff requests in the alternative that the Court certify an issues class under Rule 23(c)(4). ......................... 19

  III.    Conclusion. ..................................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................................ 23

# TABLE OF AUTHORITIES

Page

**Cases**

*Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.,* No. 20 C 3326, 2021 WL 3043422 (N.D. Ill. Feb. 17, 2021) .......................................................... 4

*American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.,* 757 F.3d 540 (6th Cir. 2014) ........................................................................................................ 8

*Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240 (N.D. Ill. 2014) .............. 17

*Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (3d Cir. 2015) ...................................... 14, 18, 22

*Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC,* 509 F. Supp. 3d 547 (D.S.C. 2020) ........................................................................................................ 20

*Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC,* 91 F.4th 202 (4th Cir. 2024) .......................................................................................................................... 1

*Carrera v. Bayer Corp.,* 727 F.3d 300 (3d Cir. 2013) ........................................... 14

*Carroll v. Stettler,* No. 10-2262, 2011 WL 5008349 (E.D. Pa. Oct. 19, 2011) .............. 23

*Chapman v. Wagener Equities, Inc.,* No. 09 C 07299, 2014 WL 540250 (N.D. Ill. Feb. 11, 2014) ................................................................................................... 21

*City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.,* 867 F.3d 434 (3d Cir. 2017) ................................................................................... 2, 13, 15, 18

*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC,* 343 F.R.D. 581 (E.D. Mo. 2023) ........................................................................................... 4

*Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265 (3d Cir. 2013) ................................. 6, 11

*Gates v. Rohm & Haas Co.,* 655 F.3d 255 (3d Cir. 2011) ...................................... 23

*Hargrove v. Sleepy's LLC,* 974 F.3d 467 (3d Cir. 2020) ......................................... 16

*Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349 (3d Cir. 2013) ............................... 14

*Hinman v. M&M Rental Ctr., Inc.,* 596 F. Supp. 2d 1152 (N.D. Ill. 2009) .................. 21

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,* 421 F. Supp. 3d 12 (E.D. Pa. 2019) .......................................................... 22, 24

*Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682 (7th Cir. 2013) ................................. 2, 5, 7

*Kelly v. RealPage, Inc.* ................................................................................................ 19

*Kyriazi v. W. Elec Co.* 647 F.2d 388 (3d Cir 1981) .................................................. 18

*Lewis v. Government Employees Insurance Company,* 98 F.4th 452 (3d Cir. 2024) ...................................................................................................................... 19

*Leyse v. Bank of Am. Nat'l Ass'n,* 804 F.3d 316 (3d Cir. 2015) ............................. 6, 11

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)...................................... 11

*Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021)........................................ *1, 4, 7, 11*

*Marcus v. BMW of N. Am. LLC*, 687 F.3d 583 (3d Cir. 2012)............................ 14

*Mims v. Arrow Fin. Servs.*, 565 U.S. 368 (2012)................................................ *2*

*Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003)................ 8

*Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012)............. 8

*Steven A. Conner, DPM, P.C. v. Fox Rehabilitation Services, P.C.*, 2025 WL 289230, at \*7–8 (3d Cir. 2025) (unpublished opinion) ................................................ 9

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)...................... 16

**Statutes**

*47 U.S.C. § 227(b)(3)(B)*.................................................................................... *6*

**Rules**

*Fed. R. Civ. P. 23(b)(3)*.................................................................................... *1, 3, 20*

*Fed. R. Civ. P. 23(c)(4)*.................................................................................... *3, 18, 20*

**Regulations**

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14133 (2003)*......................................................... *4, 9*

**MEMORANDUM**

## I.    Introduction.

Plaintiff respectfully requests that the Court reconsider its Order denying Plaintiff's motion for class certification. ECF 120. The ruling effectively bars TCPA junk fax class actions, regardless of the strength of the evidence or the clarity of the transmission records. Such a result is not compelled by Rule 23, the TCPA, or binding Third Circuit precedent.

Alternatively, Plaintiff asks the Court to certify a narrower class under Rule 23(b)(3), excluding anyone who received Defendant's faxes through an online fax service, or to certify an issues class under Rule 23(c)(4).

To be sure, Plaintiff disagrees with the Court's decision to follow *Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024) ("*Career Counseling*"), rather than *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021) ("*Lyngaas*"), in holding that faxes received through online fax services fall outside the TCPA's protections. Authority exists on both sides. The federal courts are divided.

Even assuming *Career Counseling* reflects the correct statutory interpretation, here the Court erred in holding that the modest factual inquiry necessary to identify which class members received faxes on traditional stand-alone machines defeats ascertainability under Rule 23. That conclusion misapplies *City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434, 440–42 (3d Cir. 2017), which expressly permits class member self-identification when bounded by a defined set of recipients and accompanied by supporting records.

1

The Supreme Court noted that the TCPA was enacted with class litigation in mind: "How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court?" *Mims v. Arrow Fin. Servs.*, 565 U.S. 368, 386 (2012). And the Seventh Circuit observed, "Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

As the concurrence in *City Select* warned, "Congress passed the Telephone Consumer Protection Act to discourage the sending of junk faxes. Our additional ascertainability requirement threatens to render this and other consumer protection statutes ineffective by creating loopholes for defendants who fail to retain customer records." 867 F.3d 448 (*in concurrence*).

Here, Defendant's records identify the fax recipients. Defendant has no idea which of them, if any, used an online fax service—nor should that unknowable detail immunize Defendant from classwide TCPA liability. Yet the Court's interpretation would make class treatment categorically unavailable in most, if not all, TCPA fax cases. That result is flatly inconsistent with *City Select*, which explicitly rejected such rigidity.

Class certification would allow efficient resolution of the core common questions and preserve the TCPA's deterrent and remedial purposes. At a minimum, the class can be narrowed to exclude recipients who used online fax services, eliminating the very concern that drove the Court's denial of class certification, and

the narrower class certified under Rule 23(b)(3). Alternatively, the Court should certify an issues class under Rule 23(c)(4) to resolve liability questions common to all class members.

## II. Argument.

### A. The Court should follow the reasoning of the Sixth Circuit in *Lyngaas*, rather than the Fourth Circuit's reasoning in *Career Counseling*.

#### 1. Courts are divided on whether the TCPA covers faxes received via an online fax service.

The Court's Opinion states as follows: "Though the Third Circuit has not addressed this issue, several courts outside this circuit have. Notably, each has found that the TCPA does not extend its protection to those who receive unsolicited faxes by way of an online fax service rather than on a stand-alone fax machine." ECF 119 at 6.

To the extent the Court merely observed that the four decisions it cited adopt that view, Plaintiff does not disagree. However, it is incorrect to suggest that no courts have reached the opposite conclusion. In *Lyngaas*, the Sixth Circuit squarely held that the TCPA applies to faxes received through online fax services. Several district courts—including those in the Seventh and Eighth Circuits—have likewise found that the TCPA encompasses modern fax technology beyond traditional fax machines. *See* Plaintiff's Reply in Support of Class Certification, ECF 102 at 14, *citing Lyngaas*; *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581, 589 (E.D. Mo. 2023) ("The Court finds the Sixth Circuit's analysis persuasive, and likewise concludes that the plain language of the statute rebuts

Defendants' argument that the TCPA applies only to traditional fax machines"); *Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc.*, No. 20 C 3326, 2021 WL 3043422, at *1 (N.D. Ill. Feb. 17, 2021) ("the Bureau's decision flies in the face of years of precedent, established by the FCC and affirmed by the Seventh Circuit, that the TCPA covers faxes sent to computers in addition to traditional fax machines."), *quoting Turza*, 728 F.3d at 684 ("Even a recipient who gets the fax on a computer and deletes it without printing suffers some loss[.]") and *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133 (2003) ("We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes.").

To the extent that the Court was noting that each of the four decisions cited held that the TCPA does not apply to fax transmissions received through an online fax service, Plaintiff does not disagree. Plaintiff notes, however, that *True Health Chiropractic, Inc. v. McKesson Corp.*, 2023 WL 7015279, at *2 (9th Cir. 2023), did not reach the statutory interpretation question, holding instead that it was bound by the Hobbs Act to follow the FCC's interpretation. *McKesson* was an administrative law holding and reversed by the Supreme Court on June 20, 2025. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, No. 23-1226, 606 U.S. --, -- S.Ct. --, 2025 WL 1716136 (2025).

This is, at bottom, a question of statutory interpretation on which federal courts have split, including courts of appeals. The Supreme Court declined to answer

the question in *McKesson*, instead remanding it to the 9th Circuit to do so in the first instance in that case. 2025 WL 1716136 at *13. Where multiple readings are equally plausible, the Court should adopt the interpretation that furthers the statute's remedial purpose. *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 327 (3d Cir. 2015) ("Because the TCPA is a remedial statute, it should be construed to benefit consumers.") (quoting *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)).

As the Supreme Court has stated, the TCPA "generally makes it unlawful for any person to send an 'unsolicited advertisement' by fax." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 3 (2019). That unqualified description stands in tension with this Court's interpretation, which would restrict the statute's reach based not on the sender's conduct, but on the type of receiving equipment—an element entirely outside the sender's control.

### 2. The Sixth Circuit's interpretation is textually and technologically sound.

In *Lyngaas*, the Sixth Circuit squarely analyzed whether "a TCPA claim is not actionable if the unsolicited advertisement is received by any device (such as a computer through an 'efax') other than a traditional fax machine." *Lyngaas,* 992 F.3d at 425. It found, "We are unpersuaded by the defendants' attempt to limit a "telephone facsimile machine" to only traditional fax machines, however, because such a narrow definition does not comport with the plain language of the TCPA." *Id.* at 425-26.

*Lyngaas* explains that the statutory definition "makes clear that a 'telephone facsimile machine' encompasses more than traditional fax machines that automatically print a fax received over a telephone line. In particular, it includes 'equipment' that has the '*capacity* ... to transcribe text or images,' *id.* (emphasis added), from or onto paper—as long as the electronic signal is transmitted or received over a telephone line. The statutory text alone, therefore, rebuts the defendants' argument." *Id.* at 426.

*Lyngaas* noted it was fallacy to "assume[] that a computer receiving a fax exists in isolation, without the high probability that such a computer is connected to a printer and to a modem capable of receiving faxes, which as a whole is fully capable of receiving electronic signals over a telephone line and printing out a fax. (Indeed, a traditional fax machine is composed of a modem, scanner, and printer, and thus parallels the computer set-up mentioned above)." *Id.* at 426-27.

*Lyngaas* concluded: "The statutory definition, however, encompasses more than a traditional fax machine. Notably, it does not require the actual printing of the advertisement, which dispels the defendants' argument that Congress was concerned only with the burdensome ink-and-paper costs of fax advertising." *Id.* at 427.

### 3. Federal case law supports a broad reading of the TCPA.

The Seventh Circuit concurs with *Lyngaas*'s reasoning. *See Turza*, 728 F.3d at 684 ("To the extent Turza contends that each recipient must prove that he printed the fax (wasting paper) or otherwise suffered monetary loss, he is wrong on the law. The statute provides a $500 penalty for the annoyance. 47 U.S.C. § 227(b)(3)(B). Even a recipient who gets the fax on a computer and deletes it without printing suffers

*some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk. That loss, and the statutory remedy, are the same for all recipients"). *See also American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544–45 (6th Cir. 2014) ("unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce"), *citing Turza*, 728 F.3d at 684; *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 820 (8th Cir. 2012) (the TCPA was intended in part to "keep[ ] telephone lines from being tied up" by unsolicited fax advertisements); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003) (noting that "unsolicited fax advertising interferes with company switchboard operations and burdens the computer networks of those recipients who route incoming faxes into their electronic mail systems").

Indeed, the Third Circuit has explained that the TCPA protects more than just wasted toner and paper. "Congress took aim at the *intrusive* nature of unsolicited faxes. Much the same way a telemarketing call invades one's right to be left alone, an unsolicited fax intrudes upon the right to be free from nuisance." *Steven A. Conner, DPM, P.C. v. Fox Rehabilitation Services, P.C.*, 2025 WL 289230, at *7–8 (3d Cir. 2025) (unpublished opinion). *See also Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F.Supp.2d 488, 500 (E.D. Pa. 2006) ("the case law consistently recognizes that the TCPA was enacted in part to address the privacy invasion created by sending an unsolicited fax") (citing cases), *aff'd sub. nom. Subclass 2 of Master Class of*

*Plaintiffs*, 503 F.3d 339 (3d Cir. 2007). That injury exists whether the fax prints on paper or appears in an inbox as a PDF.

Many fax machines in use today receive fax documents in PDF format, which is a protocol that allows a printable document to be represented electronically. Portable Document Format, defined by ISO-32000, is an international standard that enables users to present and exchange printable documents in a manner that is independent of hardware, software, or operating system.[1] PDF print capabilities are natively included with all major operating systems, including Windows, MacOS, and Linux. Any equipment with the capability to read and process PDF documents has the capacity to transcribe text and images from an electronic signal onto paper.

4. **The FCC's 2003 rulemaking supports TCPA coverage of online fax services.**

The interpretation adopted by *Career Counseling* and this Court produces an absurd result: the legality of the sender's conduct turns on the unknown and unknowable configuration of the recipient's fax setup. That interpretation conflicts with basic statutory construction principles and the FCC's guidance. The FCC rejected that result in its 2003 rulemaking, explaining as follows:

> The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. **Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal**

---

[1]    *See* ISO-32000-2 (2020), available at https://pdfa.org/resource/iso-32000-2/.

8

**computers and fax servers, rather than to traditional stand-alone facsimile machines**.

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18

F.C.C. Rcd. 14014, 14133-34 (2003) (emphasis added).[2]

Here, the Court relied on *Loper Bright* to support deference to agency interpretations "issued contemporaneously with the statute ... and which have remained consistent over time." Order at 12 n.3, citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). But that principle supports the 2003 FCC order—not the 2019 *Amerifactors* Bureau-level declaratory ruling, which lacks precedential weight and remains under review.

>    5. **The statutory definition of "Telephone Facsimile Machine" encompasses multifunction setups.**

Again, as noted by the Third Circuit in *Leyse* and *Gager*, the TCPA is a remedial statute designed to protect consumers. Congress sought to protect the fax transmission ecosystem, regardless of hardware implementation. The reason for defining "telephone facsimile machine" was because Congress intended to include more than the standalone fax machine. *See Lyngaas*. If only standalone fax machines were intended, then no definition would have been necessary. Instead, Congress defined the term as "equipment."

Here, the Court assumed that "equipment" must mean a single item, but dictionaries uniformly define "equipment" as a *set* of items used for a particular

---

[2]    The same regulation specifically rejects the notion that Congress was only concerned about the printing of unsolicited faxes. *Id.* ("However, Congress also took account of the "interference, interruptions, and expense" resulting from junk faxes"), *quoting* H.R. Rep. No. 102–317 at 25 (1991).

purpose. For example, Merriam-Webster's dictionary defines "equipment" as "the set of articles or physical resources serving to equip a person or thing: such as (1) the implements used in an operation or activity…." https://www.merriam-webster.com/dictionary/equipment, accessed at 2:40 p.m. on June 16, 2025 (emphasis added). The Cambridge English language dictionary defines the term as "the set of necessary tools, clothing, etc. for a particular purpose." https://dictionary.cambridge.org/us/dictionary/english/equipment, accessed at 2:42 p.m. on June 16, 2025. And the Oxford Learner's Dictionaries define "equipment" as "the things that are needed for a particular purpose or activity." https://www.oxfordlearnersdictionaries.com/us/definition/american_english/equipment, accessed at 2:43 p.m. on June 16, 2025.

Each of these definitions makes clear that "equipment" is not limited to a single item. Thus, the Sixth Circuit was correct that courts should not consider "a computer receiving a fax … in isolation." *Lyngaas*, 992 F.3d at 426. Online fax services have the capacity to receive an electronic signal from the regular telephone network and deliver a document that is printable on any computer, regardless of hardware, software, or operating system. Online fax services are connected to the telephone network—a fax can be sent from a standalone fax machine to a customer of an online fax service—and they handle inherently printable PDF documents. The statutory test is capacity, not actual printing; so online fax services plainly meet the mark.

6.   **At a minimum, the Sixth Circuit's interpretation is plausible and should control under remedial statutory principles.**

At the very least, the Sixth Circuit's interpretation is equally plausible. Under Third Circuit precedent, the Court should adopt the interpretation that gives the statute full effect and preserves its protective purpose.

B.   **Even if the TCPA excludes users of online fax services, the class remains ascertainable under *City Select*.**

1.   **The Court misapplied *City Select* by requiring classwide proof of fax equipment.**

The Court's opinion suggests that any individualized inquiry into each recipient's fax equipment defeats ascertainability. That misreads *City Select*, which rejected precisely that reasoning.

In *City Select*, the defendant paid a fax broadcaster to send faxes to recipients drawn from a dealership database. Neither the defendant nor its fax broadcaster retained records of the fax transmissions. The district court denied class certification, holding there was no "reliable and administratively feasible means of determining whether putative class members fell within the class definition" of persons "who were sent one or more telephone facsimile messages." *Id.* at 437.

The Third Circuit reversed. "A Rule 23(b)(3) class must also be "currently and readily ascertainable based on objective criteria." *Id.* at 439, *citing Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012). "To satisfy this standard, plaintiff must show that '(1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."" *Id.*, *quoting Byrd v. Aaron's*

*Inc.*, 784 F.3d 154 (3d Cir. 2015) and *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). But the plaintiff need not "be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified.'" *Id.*, quoting *Byrd*, 784 F.3d at 163 and *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)) (emphasis in *City Select* and *Byrd*).

In *City Select*, the Third Circuit explained the rationales for the ascertainability standard:

> We have articulated three principal rationales for this standard. First, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class. Second, it ensures that a defendant's rights are protected by the class action mechanism, and that those persons who will be bound by the final judgment are clearly identifiable. Finally, it ensures that the parties can identify class members in a manner consistent with the efficiencies of a class action.

*City Select*, 867 F.3d at 439, *quoting Carrera*, 727 F.3d at 306-07 and *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (internal citations and quotations omitted).

"Our ascertainability precedents do not categorically preclude affidavits from potential class members, in combination with the Creditsmarts database, from satisfying the ascertainability standard." *City Select*, 867 F.3d at 440. Because the proposed class was limited to the persons in the database, "[t]he first two principal policy rationales for the ascertainability standard—facilitating opt-outs and identifying persons bound by the final judgment—are not implicated in this case. Unlike the consumer classes in *Marcus*, *Hayes*, and *Carrera*, in which plaintiffs had not limited the proposed class definitions to the available records, the Creditsmarts

database allows for notice directly to potential class members and limits the universe of potential claimants. Any recipients of the BMW faxes who are not included in the Creditsmarts database would not be bound by a hypothetical judgment." *Id.* at 441.

Where the pool of potential class members is defined by records—like the dealership database in *City Select*—self-identification supported by simple documentation is sufficient.

> ### 2. The Howard Report defines a closed set of class members and the class definition can be narrowed by expressly excluding any member who used an online fax service.

Here, Plaintiff has done exactly what *City Select* permits. The proposed class is limited to persons identified in Exhibit B to the Expert Report of Lee Howard, based on Defendant's own transmission records. That is a closed set of known recipients. Unlike in *City Select*, there is no uncertainty about who was sent the faxes— Defendant's own data establishes that.

But to address the Court's concern regarding online fax service users, the class can be further refined to expressly exclude any person who received Defendant's fax through such a service.[3] The revised class definition can read as follows:

---

[3]     In *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020), the Third Circuit recognized that a renewed motion for class certification is appropriate when plaintiffs can refine their class definition or present additional evidence to meet Rule 23's requirements. *Id.* at 477 ("The Rule does not distinguish between a renewed motion for certification based on new evidence and one based on a more narrow and clearer definition of a class that meets the requirements of Rule 23."). Further, the Court always has discretion to modify proposed class definitions in ruling on a motion for class certification. *See, e.g., Byrd*, 784 F.3d at 171 ("it makes sense to allow the 'district court an opportunity to fine-tune its class certification order … rather than opening the door too widely to interlocutory appellate review.'"), *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294–95 (1st Cir. 2000).

All persons: (1) who were sent one or more facsimiles between November 16, 2015, and January 10, 2019, inviting a healthcare professional to register or participate in the National Disease and Therapeutic Index or Channel Dynamics survey in exchange for points to be redeemed for rewards; (2) who never registered or participated in either survey; (3) for whom Defendant has produced no evidence of consent to be sent the invitation by facsimile transmission; and (4) who are listed in Exhibit B to the "(Supplemental Sur-Rebuttal) Expert Report of Lee Howard" dated February 8, 2024; **but (5) excluding all persons who used an online fax service to receive facsimiles.**

This mirrors *City Select*, where the class was limited to persons appearing in a known database. Just as the Third Circuit accepted affidavits plus database records in that case, so too here can affidavits—corroborated by objective business records—suffice to verify the type of fax equipment used. Self-identification would be necessary only if the case is successful, so class members can claim their payments.

### 3. Verifying fax equipment post-trial is straightforward and feasible.

Determining whether a class member used a stand-alone fax machine is a binary and simple factual question, well suited for post-verdict administration. This class is composed of medical professionals and practices that routinely maintain business records, including equipment receipts, inventory logs, insurance forms, and tax documents. In discovery, Plaintiff produced precisely that kind of proof: the receipt showing his fax machine purchase. *See* Exhibit A.

The class member affidavit—a claim form—can require class members to certify their use of stand-alone fax equipment and submit supporting documentation. Such a proposed claim form is attached as Exhibit B. Such a process is neither unusual nor unworkable. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 249-50 (N.D. Ill. 2014) ("Defendants' arguments, however, primarily assume a

class or claim identification process that is based on affidavits alone, not the combination of documentary evidence and a sworn statement that plaintiffs propose. … Here, by contrast, plaintiffs contend that class members likely will be able to [provide documentation] as Plaintiffs themselves did").

The Court faulted Plaintiff for not spelling out these suggestions in its class certification briefing. (Order at 15). Plaintiff believed, and continues to believe, that the fax equipment question is irrelevant for the reasons stated in Section A above. Although Plaintiff relied on *City Select*, the process described above is straightforward, feasible, and consistent with all other Third Circuit cases.

### 4. The Court ignored the core holding of *City Select*.

At page 15 of its Opinion, the Court quoted *City Select*'s warning that "affidavits from potential class members, standing alone ... will not constitute a reliable and administratively feasible means." But the Court ignored the very next sentence, which explains that affidavits "in combination with records" can meet the standard. 867 F.3d at 441-42.

Thus, the holding in *City Select* is not that plaintiff must present classwide evidence (or even evidence beyond affidavits) on the narrow factual question of what fax equipment each of the fax recipients used. Rather, the point is that there are records to limit potential class membership.

After all, in *City Select* there was nothing to establish whether a particular person received the fax at issue—or indeed what equipment said fax was received on—other than a contemplated affidavit. Yet, the Third Circuit, following *Byrd*, held

that an affidavit coupled with the database defining the universe of potential claimants could be enough.

In *Byrd*, the Third Circuit explains, "*Carrera* does not suggest that no level of inquiry as to the identity of class members can ever be undertaken. If that were the case, no Rule 23(b)(3) class could ever be certified." 784 F.3d at 171. *See Kyriazi v. W. Elec Co.* 647 F.2d 388, 396 (3d Cir 1981) ("At that stage [after proving liability], whether it be a hybrid Rule 23(b)(2) action or a pure Rule 23(b)(3) action, some form of proof of claim procedure is a patent necessity.")

Likewise, in *Kelly v. RealPage, Inc.*, the Third Circuit reversed a denial of class certification, holding that "matching of records is precisely the sort of exercise we have found sufficiently administrable to satisfy ascertainability in other cases." 47 F.4th 202, 224-25 (3d Cir. 2022) (citing cases). The Third Circuit further held:

> To the extent RealPage's objection is to the number of records that must be individually reviewed, that is essentially an objection to the size of the class, which we stated explicitly in Byrd is not a reason to deny class certification. To hold otherwise would be to categorically preclude class actions where defendants purportedly harmed too many people, which would "seriously undermine the purpose" of a class action to "vindicate meritorious individual claims in an efficient manner." *Id*. So long as the review is for information apparent on the face of the document, the number of files does not preclude ascertainability. *See id*. at 170 ("There will always be some level of inquiry required to verify that a person is a member of a class .... Such a process of identification does not require a 'mini-trial,' nor does it amount to 'individualized fact-finding[.]'" (*quoting Carrera*, 727 F.3d at 307)).

47 F.4th 202, 224-25 (3d Cir. 2022), *quoting Byrd*, 784 F.3d at 170-71.

"Indeed, we have held that 'a straightforward 'yes-or-no' review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple

sources.'" *Lewis v. Government Employees Insurance Company*, 98 F.4th 452, 462 (3d Cir. 2024), *quoting Kelly*, 47 F.4th at 203-04. Receipts from class members are such individual records from multiple sources that allow for a yes or no review. In sum, the question of what fax equipment a particular medical practice used at a particular point in time is exactly the sort of straightforward factual inquiry that can reliably be undertaken in a post-trial administrative process.

### C. Narrowing the class definition to exclude people who used online fax services eliminates the Court's predominance concern.

After finding Plaintiff's proposed class failed the ascertainability requirement because it potentially included persons who received Defendant's fax through an online fax service and who, therefore, could not recover statutory damages,[4] the Court went on to hold, in the alternative, that the proposed class failed Rule 23(b)(3)'s predominance requirement. According to the Court, "whether the faxes at issue were received on a stand-alone fax machine or by way of an online fax service predominates over questions common to the proposed class." Order at 17.

Plaintiff respectfully disagrees that the type of receiving equipment constitutes an "essential element" of a TCPA claim. Indeed, the *Career Counseling* district court refused to dismiss that case due to the plaintiff's failure to identify its fax equipment in the complaint. *See Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 509 F. Supp. 3d 547, 558-59 (D.S.C. 2020). "When considering this issue, courts have observed that '[t]he plain language of the [TCPA] statute does not refer to any

---

[4]     There is no evidence that *any* class member received Defendant's fax transmissions by way of an online fax service.

requirement that the fax is actually received by the addressee.'" *Id.*, citing *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *8 (N.D. Ill. Feb. 11, 2014) and *Hinman v. M&M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009) ("On its face, the statute prohibit[s] the sending of unsolicited fax advertisements and make[s] no reference at all to receipt, much less to printing.").

Even assuming *arguendo* that the type of equipment is legally relevant, the supposed predominance problem disappears once the class is narrowed. Here, Plaintiff proposes a revised class definition that excludes anyone who received Defendant's faxes via an online fax service. That eliminates the equipment issue from the class entirely.

With that refinement, the issues in the case—whether Defendant's faxes are advertisements, whether the records establish that they were successfully sent, and whether they were unsolicited—are not just common; they are dispositive. If Plaintiff prevails on those questions, liability will be established on a class-wide basis. Any residual individual issue—namely, whether a specific class member used a qualifying stand-alone fax machine—can be addressed through post-verdict claims administration.

In other words, the common questions here do not merely predominate—they define the case. Individualized issues, if any, arise only in the remedial phase and can be resolved using a straightforward process involving affidavits and supporting documentation. As courts have routinely held, that kind of administrative inquiry does not defeat class certification. See *Byrd,* 784 F.3d at 171 ("If [individual inquiries]

were [enough to defeat class certification], no Rule 23(b)(3) class could ever be certified").

As revised, the class definition avoids individualized trials and credibility contests. Class members will have to substantiate their eligibility only if and when Defendant is found liable. That approach is both manageable and fair—and entirely consistent with Rule 23 and the TCPA's enforcement goals.

**D.      Finally, if the Court denies certification of a Rule 23(b)(3) class, then Plaintiff requests in the alternative that the Court certify an issues class under Rule 23(c)(4).**

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Courts frequently use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication." *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 71 (E.D. Pa. 2019), *quoting Carroll v. Stettler*, No. 10-2262, 2011 WL 5008349, at *4 (E.D. Pa. Oct. 19, 2011).

"The Third Circuit has instructed that when certifying an issue class, the issues to be tried should be clearly enumerated." *Id.*, *citing Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011). "Likewise, the district court should explain how class resolution will "fairly and efficiently" advance the resolution of the class members' claims." *Id.*

Here, if the Court concludes that the hypothetical recipient of Defendant's junk fax prevents determining exactly who was successfully sent one of Defendant's faxes

on equipment covered by the TCPA presents individual issues that prevent certification of a Rule 23(b)(3) class (in spite of *City Select* and *Lyngaas*), it should nonetheless certify the issue of whether Defendant sent unsolicited advertisements with fax transmissions, and reserve for individual adjudication the question of who was wronged by this conduct and can recover for it.

The Third Circuit has identified a non-exclusive list of factors to consider in certifying an issues class:

> The type of claim(s) and issue(s) in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*In re Suboxone*, 421 F. Supp. 3d at 74, *quoting Gates*, 655 F.3d at 273.

Here, these factors undeniably weigh in favor of class-wide resolution. The claims are governed by a single statute and the issues are well-defined and:

1. Were Defendant's invitations "advertisements" within the TCPA's definition of "unsolicited advertisement?

2. Did Defendant send them to Plaintiff and the other class members by fax transmission?

3.     Did Defendant send them without the prior express invitation or permission of the intended recipients?

Those issues do not overlap with or depend on knowing the type of facsimile receiving equipment used by each class member. Resolving these common issues will resolve Defendant's liability, pending establishment of the class member's right to collect damages. or invitation would streamline the resolution of remaining issues for individual class members and not impact them in a way that would be unfair to anyone, Defendant included. Because these issues can be litigated and resolved fairly and efficiently, it would be appropriate for the Court to certify an issues class under Rule 23(c)(4), if the Court declines to certify a class under Rule 23(b)(3).

## III. Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider its denial of class certification and certify the class as previously defined or, alternatively, certify a narrowed class that excludes any member who used an online fax service. Otherwise, in the alternative, Plaintiff requests that the court certify an issues class so the common issues may be resolved for all class members.

Dated: June 20, 2025

Respectfully submitted,

By: /s/ Phillip A. Bock

Richard Shenkan (PA 79800)
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA 16107
(412)716-5800
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St. Ste. 2100
Chicago, IL 60601
(312) 658-5500
service@classlawyers.com

Lawrence F. Stengel
Saxton & Stump, LLC
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
(717)556-1080
lfs@saxtonstump.com

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 20, 2025, he caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

By: /s/ Phillip A. Bock