# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD E. FISCHBEIN, MD,
individually and on behalf of a class of
similarly-situated persons,

                Plaintiff,

v.

IQVIA INC.,

                Defendant.

Case No. 2:19-cv-05365-NIQA

**IQVIA INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING CLASS CERTIFICATION OR, IN THE ALTERNATIVE, TO CERTIFY A MORE NARROWLY-DEFINED CLASS UNDER RULE 23(B)(3) OR AN ISSUES CLASS UNDER RULE 23(C)(4)**

I.      INTRODUCTION ......................................................................................... 1

II.     PROCEDURAL BACKGROUND................................................................ 1

III.    LEGAL STANDARD................................................................................... 3

IV.     ARGUMENT ............................................................................................... 4

     A.      Plaintiff Does Not Argue That There Is Any New Evidence Or An
          Intervening Change In Law That Justifies Reconsideration ................................. 4

     B.      There Was No Error In The Court's Decision ....................................................... 4

          1.      The Court Correctly Held That The TCPA Does Not Cover Online
                  Fax Services ................................................................................................ 4

          2.      The Court Did Not Err In Holding That The Factual Inquiry
                  Necessary To Determine Which Putative Class Members Received
                  Faxes Through Online Fax Services Defeats Ascertainability ................. 9

     C.      Narrowing The Class Definition Does Not Cure the Defects in Plaintiff's
          Proposed Class .................................................................................................... 13

     D.      There Are No Grounds to Certify an Issues Class ............................................... 14

V.      CONCLUSION......................................................................................... 16

**Cases**

*Ackourey v. Mohan's Custom Tailors, Inc.*,
No. 09-CV-5454, 2012 WL 33032 (E.D. Pa. Jan. 6, 2012)........................................6

*Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*,
No. CV 13-3101, 2016 WL 354881 (E.D. Pa. Jan. 28, 2016) ..............................6, 7

*In the Matter of Amerifactors Fin. Grp., LLC*,
34 F.C.C. Rcd. 11950 (2019) ..................................................................................2

*Astro Companies, LLC v. WestFax Inc*,
No. 1:23-CV-02328-SKC-CYC, 2025 WL 474931 (D. Colo. Feb. 12, 2025) .........7

*Bhatnagar v. Surrendra Overseas Ltd.*,
52 F.3d 1220 (3d Cir. 1995)..................................................................................10

*Burns v. SeaWorld Parks & Ent., Inc.*,
347 F.R.D. 51 (E.D. Pa. 2024)..............................................................................16

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015)..............................................................2, 10, 11, 13

*Career Counseling, Inc. v. Amerifactors Financial Grp., LLC*
91 F.4th 202 (4th Cir. 2024),
*cert. denied*, No. 24-86, 2025 WL 1787723 (U.S. June 30, 2025) ......................5, 7

*City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc.*,
867 F.3d 434 (3d Cir. 2017)..........................................................3, 10, 11, 12

*Fragale v. Wells Fargo Bank, N.A.*,
No. CV 20-1667, 2020 WL 6498653 (E.D. Pa. Oct. 7, 2020)............................4, 10

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011)..............................................................................14, 15

*Lisa v. Saxon Mortg. Servs., Inc.*,
No. CV 11-4586, 2016 WL 5930846 (E.D. Pa. Oct. 11, 2016)............................15

*Lutz Surgical Partners PLLC v. Aetna, Inc.*,
No. CV 15-2595-BRM-TJB, 2023 WL 2153806 (D.N.J. Feb. 21, 2023) ..............15

*Lyngaas v. Curaden AG*,
992 F.3d 412, 426 (6th Cir. 2021) .......................................................................5, 7

*Marcus v. BMW of N. Am., LLC,*
    687 F.3d 583 (3d Cir. 2012)..................................................................................1, 3

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,*
    176 F.3d 669 (3d Cir. 1999)........................................................................................4

*Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.,*
    432 F. Supp. 2d 488 (E.D. Pa. 2006), *aff'd sub nom. Subclass 2 of Master*
    *Class of Plts. Defined & Certified in Jan. 30, 2006 & July 28, 2006 Ords. of*
    *Cir. Ct. of Cook Cnty., Ill. in Litig*, 503 F.3d 339 (3d Cir. 2007) .............................8

*In re Niaspan Antitrust Litig.,*
    67 F.4th 118 (3d Cir. 2023) .......................................................................................1

*Retail Brand All., Inc. v. Rockvale Outlet Ctr., LP,*
    No. CIV A 06-01857, 2007 WL 966509 (E.D. Pa. Mar. 28, 2007)......................6, 9

*Rorrer v. Nicholas,*
    No. 19-CV-01398-GEKP, 2021 WL 5447984 (E.D. Pa. Nov. 22, 2021)...............10

*Rowe v. E.I. DuPont de Nemours & Co.,*
    No. CIV. 06-1810 (RMB), 2009 WL 2424086 (D.N.J. July 29, 2009)..................16

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18
    F.C.C. Rcd. 14014 (2003).............................................................................................8

*Russell v. Educ. Comm'n for Foreign Med. Graduates,*
    15 F.4th 259 (3d Cir. 2021) .............................................................................14, 15, 16

*Steven A. Conner, DPM, P.C. v. Fox Rehab. Servs., P.C.,*
    No. 23-1550, 2025 WL 289230 (3d Cir. Jan. 24, 2025).............................................7

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)......................................................................................................7

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)....................................................................................................13

*Williams v. Elliott,*
    No. CV 18-5418, 2022 WL 20742702 (E.D. Pa. July 6, 2022)...............................4

# I.     INTRODUCTION

This Court correctly denied Plaintiff's motion for class certification for failure to satisfy the requirements of ascertainability and predominance.  In reaching this conclusion, the Court properly found that the Telephone Consumer Protection Act ("TCPA") does not apply to faxes received through an online fax service and that Plaintiff could not establish through classwide evidence that each class member received an at-issue fax on a "telephone facsimile machine" under the TCPA.  Plaintiff disagrees, but his disagreement does not justify reconsideration.  Yet, that is all that Plaintiff offers here:  his disagreement.  Far from establishing that one of the narrow bases for reconsideration applies, Plaintiff merely rehashes and repackages arguments that were previously raised and rejected by the Court.  Plaintiff misinterprets and mischaracterizes the Court's order, as well as other decisions and the record evidence; he impermissibly raises new arguments that he could have but failed to raise in his motion for class certification—and through all of this, he fails to point to any actual ***error***.  His difference of opinion cannot satisfy the stringent standard for a motion for reconsideration, and his motion should accordingly be denied.

# II.     PROCEDURAL BACKGROUND

The Court denied Plaintiff Richard E. Fischbein, M.D.'s motion for class certification on June 5, 2025.  (ECF No. 119.)

In its Memorandum Opinion (ECF No. 119, the "Order"), the Court noted that a proposed class must be "currently and readily ascertainable based on objective criteria."  (Order at 3 (citing *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 129-30 (3d Cir. 2023).)  A trial court must therefore "ensure that class members can be identified without extensive and individualized fact-finding or mini-trials."  (Order at 4 (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)) (internal quotations omitted).)  "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable

and administratively feasible mechanism for determining whether putative class members fall within the class definition." (*Id.* at 5 (citing *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)).)

The Court concluded that Plaintiff's proposed class was not ascertainable because Plaintiff failed to identify a "reliable and administratively feasible mechanism" for determining the type of equipment on which putative class members allegedly received a fax. (Order at 15.) Specifically, the Court held that the TCPA does not apply to faxes received via online fax services. Noting that the TCPA defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, ***from paper*** into an electronic signal and to transmit that signal over a ***regular telephone line***, or (B) to transcribe text or images (or both) from an electronic signal received over a ***regular telephone line onto paper***," the Court found "that the plain meaning of the statutory use of 'regular telephone line' refers to an analog telephone line and does not include either VoIP or T1 trunk lines." (*Id.* at 8, 10.) It further found that "the plain meaning of the TCPA's definition of 'telephone facsimile machine' contemplates a stand-alone piece of equipment that has the capacity, ***on its own***, to either transcribe text or images 'from paper' or 'onto paper.'" (*Id.* at 11 (emphasis added).) In so finding, the Court explicitly "relie[d] solely on the statutory language of the TCPA for its analysis," but noted, in addition, that "its conclusions [were] supported" by the Federal Communications Commission's ("FCC") declaratory ruling in *In the Matter of Amerifactors Fin. Grp., LLC*, 34 F.C.C. Rcd. 11950 (2019), as well as "the 1991 Report of the House Committee on Energy and Commerce[.]" (*Id.* at 11-12.)

Based on a plain reading of the TCPA's statutory language, the Court concluded that the TCPA "only provides protection to those who receive unsolicited advertisements on a traditional, stand-alone fax machine." (*Id.* at 13.) Observing that—as Plaintiff concedes—no classwide

evidence exists on the record from which an alleged recipient's fax equipment can be determined, the Court found that "the only way to determine which health care providers received faxes by way of a traditional, stand-alone fax machine is through 'extensive and individualized fact-finding.'" (*Id.* at 15 (citing *Marcus*, 687 F.3d at 593).) In particular, the Court rejected Plaintiff's "suggest[ion] that the class can be ascertained by some process of 'class notice and declarations after resolution of the class's claims.'" (Order at 15.) The Court thus held that "[a]ffidavits from potential class members, standing alone, without 'records to identify class members or a method to weed out unreliable affidavits,' will not constitute a reliable and administratively feasible means of determining class membership." (*Id.* (citing *City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017).) The Court accordingly concluded that Plaintiff had not met his burden as to the requirements for ascertainability and, for the same reasons, predominance. (Order at 15-16.)

Plaintiff filed a motion for reconsideration on June 20, 2025. (ECF No. 122 ("Motion" or "Mot.").) In his Motion, Plaintiff argues that the Court committed an error in concluding that "the modest factual inquiry necessary to identify which class members received faxes on traditional stand-alone machines defeats ascertainability under Rule 23." (Mot. at 1.) In the alternative, Plaintiff asks the Court to either certify a narrower class under Rule 23(b)(3) that excludes putative class members who received an at-issue fax through an online fax service, or to certify an issues class under Rule 23(c)(4). (*Id.*)

## III. LEGAL STANDARD

The "scope of review for a motion for reconsideration is 'extremely limited.'… A party may not use such a motion as an opportunity to relitigate decided issues … Rather, a motion for reconsideration may be used only to correct manifest errors of law or fact, to introduce newly

discovered evidence, or to present an intervening change in law." *Williams v. Elliott*, No. CV 18-5418, 2022 WL 20742702, at *1 (E.D. Pa. July 6, 2022) (Quiñones, J.)

"Accordingly, a motion for reconsideration should only be granted where the movant shows: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion' at issue; 'or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Fragale v. Wells Fargo Bank, N.A.*, No. CV 20-1667, 2020 WL 6498653, at *1 (E.D. Pa. Oct. 7, 2020) (Quiñones, J.) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "Motions for reconsideration may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Fragale*, 2020 WL 6498653, at *1. (citation and internal quotations omitted).

## IV. ARGUMENT

### A. Plaintiff Does Not Argue That There Is Any New Evidence Or An Intervening Change In Law That Justifies Reconsideration

Plaintiff does not argue that there has been an intervening change of law; nor does he argue that there is new evidence that was not available at the time that the Court made its decision. (*See generally* Mot.) *Williams*, 2022 WL 20742702, at *1. He has therefore abandoned these grounds.

### B. There Was No Error In The Court's Decision

#### 1. The Court Correctly Held That The TCPA Does Not Cover Online Fax Services

To the extent Plaintiff argues that the Court erred in holding that the TCPA does not apply to online fax services, Plaintiff is incorrect: there was no error in the Court's Order, and Plaintiff's disagreement with the Order cannot manufacture one.

At the outset, it is not clear that Plaintiff is arguing that the Court committed an error at all. Plaintiff appears to merely express his "***disagree[ment]*** with the Court's decision to follow" the

Fourth Circuit's decision in *Career Counseling, Inc. v. Amerifactors Financial Grp., LLC* instead of the Sixth Circuit's decision in *Lyngaas v. Curaden AG*.  (Mot. at 1 (emphasis added).)  As relevant here, in *Lyngaas*, the Sixth Circuit concluded that the TCPA applies to an efax, i.e., "a document sent as a conventional fax then converted to and delivered to a consumer as an electronic mail attachment," although it also held that "a fax *sent as an email* over the Internet—e.g., a fax attached to an email message or a fax whose content has been pasted into an email message—is not subject to the TCPA."  992 F.3d 412, 426 (6th Cir. 2021).  In *Career Counseling*, the Fourth Circuit affirmed the district court's denial of class certification on the ground that an online fax service "neither receives an electronic signal 'over a regular telephone line' nor has the capacity to transcribe text or images 'onto paper'" and therefore "cannot be said to qualify as a 'telephone facsimile machine[.]'"  91 F.4th 202, 210 (4th Cir. 2024), *cert. denied*, No. 24-86, 2025 WL 1787723 (U.S. June 30, 2025) (citations omitted).  Contrary to Plaintiff's mischaracterization of the two decisions as contradictory, however (Mot. at 1), the *Career Counseling* court also expressly noted that its holding was not inconsistent with *Lyngaas*, because the technologies at issue were different:  *Lyngaas* "define[d] an *'efax' as something different from an online fax service* and specifie[d] that an efax '[was] sent over a telephone line' rather than 'as an email over the Internet.'"  *Career Counseling*, 91 F.4th at 210 n.5 (quoting *Lyngaas*, 992 F.3d at 427) (emphasis added).

Plaintiff argues that this Court should have adopted the reasoning in the concededly non-precedential *Lyngaas* decision given that, "[a]t the very least, the Sixth Circuit's interpretation is [] plausible."  (Mot. at 11.)  Although far from clear, Plaintiff further asserts that the reasoning in

*Lyngaas* would have supported a different result on Plaintiff's class certification motion.[1]  (Mot. at 10-11.)   But Plaintiff's "disagreements [] do not meet the narrowly prescribed circumstances for reconsideration."  *Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*, No. CV 13-3101, 2016 WL 354881, at *3 (E.D. Pa. Jan. 28, 2016) (denying motion for reconsideration where the plaintiff "stated the basis of its disagreement" with the court's order but did "not establish[] that the [] decision amount[ed] to a clear error of law or fact"); *see Retail Brand All., Inc. v. Rockvale Outlet Ctr., LP*, No. CIV A 06-01857, 2007 WL 966509, at *5 (E.D. Pa. Mar. 28, 2007) ("In its motion for reconsideration, [the defendant] simply disagrees with the court's dismissal of its counterclaim and does not cite any new evidence or case law to show that the court committed legal error. Therefore, the court does not need to reconsider or address [its] arguments on this point."); *Ackourey v. Mohan's Custom Tailors, Inc.*, No. 09-CV-5454, 2012 WL 33032, at *1 (E.D. Pa. Jan. 6, 2012) ("It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.").  Plaintiff already made these arguments and cited to *Lyngaas* in the underlying class certification briefing, and the Court considered and rejected his arguments.  (ECF No. 87 at 21; ECF No. 102 at 14.)  Plaintiff's failure to identify any clear error justifies denial of his Motion.

To the extent that Plaintiff *is* arguing that the Court committed an error, however, he is wrong, for the following reasons.

***First***, there is no error in the Court's decision not to follow *Lyngaas*, because it is not a precedential decision, and in any event is not inconsistent with the Court's interpretation of the TCPA.  As summarized above, *Lyngaas* specifically held that the TCPA does ***not*** apply to faxes

---

[1] As discussed below, *Lyngaas* does not in fact compel a different result on Plaintiff's motion for class certification.

sent as emails. 992 F.3d at 426. *Lyngaas* therefore is not inconsistent with this Court's Order finding that faxes received via online fax services fall outside the scope of the TCPA. (Order at 11, 15.) *See Astro Companies, LLC v. WestFax Inc*, No. 1:23-CV-02328-SKC-CYC, 2025 WL 474931, at *2 (D. Colo. Feb. 12, 2025) (distinguishing between *Lyngaas*, where the court "was asked to consider whether a computer receiving an 'efax' could qualify as a telephone facsimile machine," and the case before it, where the court was "evaluating whether an online fax *service* was entitled to protection under the TCPA"); *Career Counseling*, 91 F.4th at 210 ("*Lyngaas* … defines an 'efax' as something different from an online fax service and specifies that an efax 'is sent over a telephone line' rather than 'as an email over the Internet.'") (quoting *Lyngaas*, 91 F.4th at 210 n.5). And the Court's Order finding that the TCPA does not apply to online fax services is further bolstered by the fact that the United States Supreme Court has since denied certiorari in *Career Counseling*, in which the Fourth Circuit both reached the same conclusion and also held that the technology at issue in *Lyngaas* was different from an online fax service. *Career Counseling*, 2025 WL 1787723, at *1.

**Second**, the Court's conclusion that online fax services do not implicate the same harms as standalone fax machines was correct. (Order at 13.) Plaintiff again relies on out-of-circuit decisions to argue to the contrary, and again, the Court's failure to adopt Plaintiff's position does not amount to an error. (Mot. at 7.) *Aetna Life Ins. Co.*, 2016 WL 354881, at *3. Moreover, the two Third Circuit cases from which Plaintiff cherry-picks a handful of quotations are inapposite; they did not concern and do not even mention online fax services. (Mot. at 7-8.)[2] *Steven A.*

---

[2] Furthermore, putative class members who allegedly received faxes through an online fax service would lack standing to bring TCPA claims because they did not suffer the requisite "injury-in-fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425-426, 431 (2021).

*Conner, DPM, P.C. v. Fox Rehab. Servs., P.C.*, No. 23-1550, 2025 WL 289230, at *8, 14 (3d Cir. Jan. 24, 2025) (rejecting the defendant's First Amendment challenge to the TCPA, but affirming denial of certification based on highly individualized questions of consent); *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 491 (E.D. Pa. 2006), *aff'd sub nom. Subclass 2 of Master Class of Plts. Defined & Certified in Jan. 30, 2006 & July 28, 2006 Ords. of Cir. Ct. of Cook Cnty., Ill. in Litig*, 503 F.3d 339 (3d Cir. 2007) (holding that an insurance carrier did not have a duty to defend under the relevant insurance policy in a TCPA class action).[3]

**Third**, the Court committed no error in its discussion of what other courts and the FCC have held. The Court did not, as Plaintiff suggests, hold that "no courts [] reached" a "conclusion" "opposite" to its own. (Mot. at 3.) It merely observed that the four authorities it cited also concluded that the TCPA does not apply to online fax services.[4] (Order at 6.)

**Fourth**, the Court's decision not to adopt the FCC's observation that "Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines" is not an error. (Mot. at 8-9 (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133-34 (2003).) The Court was not bound to follow the FCC's guidance, particularly where that guidance conflicts with the plain language of the TCPA. (Mot. at 8-9.) To the extent Plaintiff argues that the Court committed an error by following the FCC's ruling in *In the Matter of Amerifactors*, instead, he is wrong: the Court was

---

[3] Plaintiff's irrelevant description of Portable Document Format, without any legal citations, does not compel a contrary conclusion, either. (Mot. at 8.)

[4] Plaintiff concedes that the four cited authorities support the Court's findings, noting: "To the extent the Court merely observed that the four decisions it cited adopt that view, Plaintiff does not disagree." (Mot. at 3.)

clear that it "relie[d] only on the statutory language of the TCPA for its analysis," and it merely noted that the FCC had reached the same conclusion. (Order at 11-12.)[5]

**Fifth**, yet again, Plaintiff's disagreement with the Court's interpretation of the term "equipment," based on various dictionary definitions, is not grounds for reconsideration. *Retail Brand All., Inc.*, 2007 WL 966509, at *5 ("[Defendant] simply disagrees with the court's dismissal of its counterclaim and does not cite any new evidence or case law to show that the court committed legal error."). Further, Plaintiff could have but failed to raise these arguments in the underlying briefing, and therefore cannot do so now. *Id.* ("The purpose of a motion for reconsideration is not to allow a party to try out new arguments that were not raised earlier.").

Thus—to the extent Plaintiff even argues as much—there is no error in the Court's holding that the TCPA does not apply to online fax services, and Plaintiff's Motion should be denied.

## 2. The Court Did Not Err In Holding That The Factual Inquiry Necessary To Determine Which Putative Class Members Received Faxes Through Online Fax Services Defeats Ascertainability

The Court correctly interpreted the Third Circuit's decision in *City Select Auto Sales, Inc. v. BMW Bank of North America Inc.* and correctly concluded that Plaintiff failed to satisfy the requirements of ascertainability and predominance. (Order at 15.)

At the outset, Plaintiff's Motion includes several arguments regarding the use of affidavits to ascertain class membership, as well as a proposed claim form, that he did not include in the underlying class certification briefing: indeed, the issue garnered only two sentences in his motion and reply. (ECF No. 87 at 21 ("In any event, any potential issue raised by consideration of *Amerifactors* could be resolved by a simple verification process if Plaintiff prevails on the merits, so the issue does not prevent class certification." ); ECF No. 102 at 15 ("In any event, the legal

---

[5] IQVIA maintains, however, that *Amerifactors* is persuasive and was correctly decided.

questions raised by *Amerifactors* and *Ryerson* are common to the class, and if class members who used an online fax service need to be denied recovery, class notice and declarations after resolution of the class's claims could accomplish this task.").)  The Court need not and should not consider arguments raised for the first time on a motion for reconsideration.  *Rorrer v. Nicholas*, No. 19-CV-01398-GEKP, 2021 WL 5447984, at *1 (E.D. Pa. Nov. 22, 2021) ("A motion for reconsideration may not be used to give a litigant a 'second bite at the apple.'") (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)); *Fragale*, 2020 WL 6498653, at *1 ("Motions for reconsideration may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.") (citations omitted).

In any event, Plaintiff's interpretation of *City Select* is wrong.  In *City Select*, the plaintiff sought certification of a class defined *inter alia* as "[a]ll auto dealerships that were included in the Creditsmarts database on or before December 27, 2012, with fax numbers identified in the database who were sent one or more telephone facsimile messages[.]"  867 F.3d at 437.  In the trial court proceedings, the plaintiff sought to compel production of the database, but the motion was denied. *Id.*  The district court denied certification on the ground that there was no "objective way" of determining which dealerships included in the database actually received a fax.  *Id.* at 438.  On appeal, the Third Circuit held that answering the inquiry of whether a particular dealership received a fax at issue through affidavits did not "***necessarily*** require individualized fact-finding that would be 'administratively infeasible.'"  *Id.* at 442 (quoting *Byrd*, 784 F.3d at 170) (emphasis added). Plaintiff latches on to that language, but stretches it too far:  the Third Circuit expressly did ***not*** "take [a] position on whether the level of individualized fact-finding in [the] case [was] administratively infeasible because [it] [was] limited by the record before [it], which [did] not include the Creditsmarts database."  *City Select*, 867 F.3d at 442.  To the contrary, as this Court

noted, the Third Circuit clearly held that "[a]ffidavits from potential class members, standing alone, *without* '*records to identify class members or a method to weed out unreliable affidavits*,' will not constitute a reliable and administratively feasible means of determining class membership." *Id.* at 441 (quoting *Byrd*, 784 F.3d at 170) (emphasis added). (Order at 15-16.) *City Select* therefore does not compel reconsideration here. Unlike in *City Select*, in this case, IQVIA produced records regarding the faxes that were allegedly sent by IQVIA to healthcare providers. (*See*, *e.g.*, ECF No. 94-14 at 7.) After evaluating those records, the Court determined that they do not include *any* information regarding the alleged recipients' fax equipment. (Order at 13-15.) Thus, as the Third Circuit held, Plaintiff's proposal to rely on affidavits does not constitute a reliable and administratively feasible means of determining class membership because there are no records that would enable the Court "to weed out unreliable affidavits[.]" *City Select*, 867 F.3d at 441.

Plaintiff's argument that "an affidavit coupled with the database defining the universe of potential claimants" would suffice demonstrates his misunderstanding of *City Select*'s holding. (Mot. at 15-16.) The Third Circuit did not hold that the Creditsmarts database, in combination with affidavits from dealerships stating that they received a fax, is enough for class certification. (*Id*.) Rather, it merely left open the possibility that the Creditsmarts database—which had not been produced, and which it had therefore not reviewed—"*could* be used as part of a reliable and administratively feasible means to determine class membership, combined with other records, with affidavits, or otherwise." *City Select*, 867 F.3d at 442 (emphasis added) ("We take no position on whether the level of individualized fact-finding in this case is administratively infeasible because we are limited by the record before us, which does not include the Creditsmarts database."). In other words, because it was *possible* that the Creditsmarts database would offer a method to "weed

out unreliable affidavits," the Court "remand[ed] so that the Creditsmarts database [could] be produced"—but it never absolved the plaintiff of the need to satisfy that requirement. *Id.* at 441, 442-443. Plaintiff implicitly concedes this requirement by vaguely arguing that, here, "affidavits—corroborated by objective business records—suffice to verify the type of fax equipment used." (Mot. at 14.) But it is undisputed that ***there are no "objective business records"*** that show on what equipment HCPs allegedly received at-issue faxes. (Order at 13-15.) Without such records, the Court correctly held that Plaintiff's class cannot be certified.

The *City Select* court was also unsure of the administrative feasibility of ascertaining class membership because it lacked information as to the potential class size. As noted above, the plaintiff's proposed class included "[a]ll auto dealerships that were included in the Creditsmarts database on or before December 27, 2012, with fax numbers identified in the database who were sent one or more telephone facsimile messages[.]" *City Select*, 867 F.3d at 437. The court denied certification for the additional reason that, "[w]ithout production of the database, there was no evidence in the record of the number of customers who both had fax numbers and were in the database as of December 2012." *Id.* at 442. It noted that, "[o]n appeal, Creditsmarts avers that its database includes 'as many as 31,000 auto dealerships,' but does not offer any information about how many of those dealerships had fax numbers and were added prior to the relevant period" and accordingly met the proposed class definition. *Id.* Here, Plaintiff's manual review (although IQVIA disputes it) concluded that *42,756* faxes were allegedly sent. (ECF No. 102-1, ¶ 9.) Thus, ascertaining class membership would necessitate, at the very least, *42,756* individualized inquiries.

Finally, Plaintiff's proposed methodology rests on class members "submit[ing] supporting documentation" with their claim form. (Mot. at 14.) Plaintiff ignores the fact that most HCPs are unlikely to be serial litigants like himself. It is therefore implausible that putative class members

will be able to produce a receipt showing their purchase of their fax machines over **_eight years_** **_ago_**, like Plaintiff did.  (Mot. at 14, Ex. A.)  And as Plaintiff himself implicitly concedes, a "claim identification process that is based on affidavits alone" would not be enough.  (Mot. at 14-15.)  And even if such documentary evidence were available, Plaintiff's proposed claims administration process still impermissibly requires each putative class member to attest to whether they satisfy each essential element of the TCPA, but denies IQVIA its due process right to cross-examine or otherwise dispute each individual's claim.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011) (affirming defendant's "right to raise any individual affirmative defenses" after plaintiff establishes claim for relief).

The Court, therefore, correctly interpreted *City Select* and held that Plaintiff failed to satisfy the ascertainability and predominance requirements for class certification.

### C.     Narrowing The Class Definition Does Not Cure the Defects in Plaintiff's Proposed Class

Narrowing the class definition to exclude "anyone who received Defendant's faxes via an online fax service" cannot cure Plaintiff's motion for class certification.  (Mot. at 18.)  For the reasons set out in the underlying class certification briefing, and in the Court's Order, there is **_no_** "reliable and administratively feasible mechanism for determining" which HCPs allegedly received an at-issue fax through an online fax service.  *Byrd*, 784 F.3d at 170.  The act of simply relabeling the class definition changes nothing.  Because there is no reliable method to identify who received a fax via an online fax service, the new proposed class definition that purports to exclude those "who received Defendant's faxes via an online fax service" fails the ascertainability and predominance requirements for the same reasons as the original class definition. (Mot. at 18.)

## D.     There Are No Grounds to Certify an Issues Class

Finally, Plaintiff's request that the Court should, in the alternative, "certify the issue of whether Defendant sent unsolicited advertisements with fax transmissions, and reserve for individual adjudication the question of who was wronged by this conduct and who can recover for it" should be denied.  (*Id*. at 20.)  Plaintiff's proposed issues class is itself incapable of classwide resolution and, in any event, certifying it would not materially advance this litigation.

In the Third Circuit, when asked to certify an issue class, a court must consider three questions: "*First*, does the proposed issue class satisfy Rule 23(a)'s requirements?  *Second*, does the proposed issue class fit within one of Rule 23(b)'s categories?  *Third*, if it does, is it 'appropriate' to certify this as an issue class?"  *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 262 (3d Cir. 2021).  "The first two steps will be informed by general class-action doctrine.  The third step will be informed by" the Third Circuit's decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011).  *Id*. at 270.  In *Gates*, the Court set out a non-exclusive list of nine factors to consider:

i.    the type of claim(s) and issue(s) in question;

ii.   the overall complexity of the case;

iii.  the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives;

iv.   the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy;

v.    the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s);

vi.   the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;

vii.  the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues;

viii.    the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others;

ix.    and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Id.* at 268 (citing *Gates*, 655 F.3d at 273). Plaintiff fails to satisfy this standard, for two reasons.

***First***, Plaintiff's proposed issues class does not satisfy the requirements of Rules 23(a) and 23(b). His proposed third issue is "[d]id Defendant send [the faxes] without the prior express invitation or permission of the intended recipients?" (Mot. at 21.) While the Court did not reach this issue in its Order, Plaintiff's original class could not be certified, and his proposed issues class cannot now be certified, for the independent reason that individualized inquiries would still be necessary to ascertain which HCPs consented to receive the at-issue faxes. (ECF No. 92 at 19-20, 29-38; *see* ECF No. 110 at 9-13.) Indeed, Plaintiff **conceded** this by having his own expert and counsel purport to conduct a (flawed and inaccurate) manual review of the consent evidence. *Id.* As a result, his issues class fails to satisfy the ascertainability and predominance requirements of Rule 23 because resolving the consent issue will require individualized inquiries. *Russell*, 15 F.4th at 262; *see Lutz Surgical Partners PLLC v. Aetna, Inc.,* No. CV 15-2595-BRM-TJB, 2023 WL 2153806, at *17 (D.N.J. Feb. 21, 2023) ("[T]he Court has found class certification is improper under Rule 23(b)(1), (b)(2), and (b)(3), and in doing so, found Plaintiffs' proposed common questions do not warrant a class-wide resolution.").

***Second***, certification of the proposed "issues" class would not materially advance the litigation. "Certification of an issues class is appropriate only if it permits fair presentation of the claims and defenses and materially advances the disposition of the litigation as a whole." *Lisa v. Saxon Mortg. Servs., Inc.*, No. CV 11-4586, 2016 WL 5930846, at *3 (E.D. Pa. Oct. 11, 2016). Here, to establish IQVIA's liability, each and every putative class member would still have to

produce evidence, subject to IQVIA's objections and cross-examination, showing that they used a standalone fax machine. (Mot. at 20 (proposing that the Court "reserve for individual adjudication the question of who was wronged by this conduct and can recover for it").) That would be inefficient, and it is also impractical: as noted above, most potential class members are not serial litigants and therefore are unlikely to have retained any relevant documentation. (Mot. at 14, Ex. A.) *Burns v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 51, 70-71 (E.D. Pa. 2024) (concluding that the plaintiff's proposed issue class "leaves unresolved [] individualized questions," "mak[ing] it unsuitable for certification"); *see Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 (RMB), 2009 WL 2424086, at *3 (D.N.J. July 29, 2009) (noting that "even if the common liability issues were resolved on a classwide bases, 'each class member would still have to demonstrate his/her specific exposure, how that exposure has increased his/her risk of disease, and his/her corresponding need for medical monitoring" and concluding that "partial certification as to these limited issues will not materially advance the litigation or result in a significant gain of efficiencies")). However, the Court need not even reach this issue. As discussed above, Plaintiff fails at the threshold to show that his proposed issues class meets the requirements of Rules 23(a) and 23(b); as a result, it ***cannot*** be certified, no matter what arguments Plaintiff makes regarding the *Gates* factors. <u>*Russell*</u>, 15 F.4th at 270 ("Rule 23(a) and Rule 23(b) decide if the proposed issues *can* be brought or maintained as class action, while the *Gates* factors determine whether they *should*.")).

## V.    CONCLUSION

For all the foregoing reasons, IQVIA respectfully requests that the Court deny Plaintiff's motion for reconsideration.

Dated: July 21, 2025

By: _/s/ Tiffany Cheung_
TIFFANY CHEUNG

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com

JOE NGUYEN (93638)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com

EDWARD EBERSPACHER (admitted *pro hac vice*)
MEYER LAW GROUP, LLC
30 North LaSalle Street
Suite 1410
Chicago, IL 60602
Telephone: (312) 265-0565
Email: TEberspacher@meyerlex.com

*Attorneys for Defendant IQVIA Inc.*

## CERTIFICATE OF SERVICE

I, Tiffany Cheung, hereby certify that on July 21, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system.  This document is available for reviewing and downloading from the ECF system.


Dated:  July 21, 2025

By:    _/s/ Tiffany Cheung_____
      TIFFANY CHEUNG