IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD E. FISCHBEIN, MD**, individually and on behalf of all others similarly-situated, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 19-5365<br>)<br>) **Hon. Nitza I. Quiñones Alejandro** |
| v. | )<br>) CLASS ACTION |
| **IQVIA, INC.**, | )<br>) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF RECONSIDERATION OR
CERTIFICATION OF A NARROWER CLASS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The TCPA applies to all fax transmissions sent to a "telephone facsimile machine," regardless of how the facsimile is ultimately accessed by the recipient. ..................................................................... 2

    II.    The type of fax equipment used is an easily established question and can be addressed through declarations, as the Third Circuit held in City Select. ........................................................................................................... 7

    III.    At minimum, the Court should certify an issues class under Rule 23(c)(4). ........................................................................................................ 12

CONCLUSION ............................................................................................................................. 14

CERTIFICATE OF SERVICE ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) .................................................................... 1

*Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024) ............................................................................................................................ 2, 5

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) ................................................................ 1

*City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434 (3d Cir. 2017) ..................................................................................................... passim

*Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011) ........................................................ 12

*Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020) ............................................................ 7

*Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015) ................................................ 3

*Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021) ......................................................... 5, 6

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 145 S.Ct. 2006 (2025) ..................................................................................................................... 2

*Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003) ................................................................................................................................... 3

*Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3d Cir. 2022) ........................................... 4

*Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3d Cir. 2021) ...................................................................................................................... 12, 13

*Steven A. Conner, DPM, P.C. v. Fox Rehabilitation Servs., P.C.*, 2025 WL 289230 (3d Cir. 2025) .............................................................................................................. 3

*True Health Chiropractic, Inc. v. McKesson Corporation*, 2023 WL 7015279 (9th Cir. 2023) ......................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(b)(3) .............................................................................................................. 12

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................................... 7

Fed. R. Civ. P. 23(c)(4) .............................................................................................................. 12

## INTRODUCTION

Defendant's opposition sidesteps Plaintiff's central arguments and instead leans on strawman distortions and speculative hypotheticals. It fails to engage with controlling authority—particularly *City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434 (3d Cir. 2017)—which confirms that class certification is appropriate where class members can verify their eligibility for statutory damages through declarations. As the Third Circuit made clear in *Byrd v. Aaron's Inc.*, 784 F.3d 154, 171 (3d Cir. 2015), "[c]ertainly, *Carrera* does not suggest that *no* level of inquiry as to the identity of class members can ever be undertaken. If that were the case, no Rule 23(b)(3) class could ever be certified." (discussing *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)).

It is undisputed that Defendant's advertisements were all transmitted to 10-digit NANPA-assigned telephone numbers over the Public Switched Telephone Network (PSTN) using the T.30 fax protocol. This is the standard method of transmission the courts and FCC have consistently recognized as a "fax."

Defendant has not identified a single person who received one of its junk faxes exclusively through an online-only service. The mere possibility that such recipients exist does not justify denying certification to the overwhelming majority who plainly fall within the statute's protection. Even if such recipients ultimately cannot recover statutory damages, their existence does not defeat class certification.

Class members can establish eligibility for statutory damages through sworn declarations affirming their use of qualifying equipment to receive faxes on the

1

date/time corroborated by Defendant's fax transmission logs proving successful fax transmission. If Defendant disputes a claim, the class member can then submit routine business documentation about their fax machine, such as a purchase receipt, tax or inventory record, or service agreement. Such a two-step process is supported by ample Third Circuit precedent.

Neither the Fourth Circuit in *Career Counseling* nor the Ninth Circuit in *McKesson* considered, let alone rejected, any such post-verdict claims process. *Career Counseling, Inc. v. Amerifactors Fin. Grp., LLC*, 91 F.4th 202 (4th Cir. 2024); *True Health Chiropractic, Inc. v. McKesson Corporation*, 2023 WL 7015279 (9th Cir. 2023), reversed and remanded by *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 145 S.Ct. 2006 (2025). The notion that those decisions foreclose certification under a declaration-and-documentation framework is simply incorrect.

The Court should reconsider its denial of class certification. Alternatively, it should certify a narrower class that excludes recipients who received Defendant's faxes solely through online-only services.

## ARGUMENT

**I. The TCPA applies to all fax transmissions sent to a "telephone facsimile machine," regardless of how the facsimile is ultimately accessed by the recipient.**

Defendant's position—that faxes sent over the 10-digit NANPA telephone network fall outside the TCPA merely because the message was later accessed as a PDF or viewed in email—contradicts the statutory text, congressional intent, and Third Circuit precedent.

First, Defendant's argument disregards the Third Circuit's mandate that the TCPA is to be construed broadly to protect consumers. *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 327 (3d Cir. 2015).

Second, the TCPA protects against the invasion of privacy and disruption of business operations, not just paper and toner. As the Third Circuit recently noted in Conner v. Fox Rehabilitation Services, the statute addresses the "interfer[ence] with company switchboard operations and burdens [on] the computer networks of those recipients who route incoming faxes into their electronic mail systems.'" *Steven A. Conner, DPM, P.C. v. Fox Rehabilitation Servs., P.C.*, 2025 WL 289230, *7–8 (3d Cir. 2025) (not precedential), *quoting Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649, 655 (8th Cir. 2003)).

Third, *City Select* draws no distinction between faxes received via traditional machines and those received through internet-enabled systems—implicitly recognizing that such differences do not alter the applicability of the TCPA.

Fourth, Defendant's reading invites absurd results. It would create a regime where TCPA liability turns not on the sender's conduct, but on unknowable, post-transmission circumstances, such as how the recipient's system processed the fax. Congress did not intend for liability to hinge on such arbitrary, recipient-side variables.

Defendant likewise fails to explain how a fax transmitted over the PSTN to a ten-digit NANPA number—using the T.30 protocol—somehow ceases to be a fax under the TCPA because it was rendered into a PDF *en route*. The TCPA focuses on

3

the transmission method, not how the document is ultimately accessed. It regulates the use of faxing technology to send unsolicited ads, not the recipient's downstream software or storage method.

This principal was underscored in *Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3d Cir. 2022), where the Third Circuit rejected a hyper-technical, device-specific approach to TCPA liability. The court held that "equipment" includes a system of components—hardware and software—that together perform the prohibited function. *Id*. at 880–81. That logic applies here: a system capable of receiving a fax over a regular telephone line and outputting it—whether on paper or as a viewable document—qualifies under the statute. The capacity to print is not negated simply because the document was not printed.

Importantly, *Panzarella* also clarified that "capacity" refers to potential functionality, not its actual use in any given case. *Id*. at 882–83 ("[T]he statutory text directs our focus to whether the equipment has the 'capacity' … not whether the equipment was used in that way."). The question is what the equipment could do, not what the recipient did with the fax. Thus, whether the fax was printed or opened as a PDF is irrelevant. The TCPA's focus is on the sender's transmission method and the recipient's system capability, not the actual handling of each individual fax.

Finally, *Panzarella* reaffirmed that the TCPA is a remedial statute and must be construed to protect consumers and avoid absurd results. *Id*. at 884. But Defendant's reading—adopted by the Court—would make TCPA liability turn on post-transmission facts—such as whether a recipient's fax service forwarded the

4

document as a PDF. *Panzarella* warns against this sort of absurdity. The TCPA regulates the sender's use of faxing technology to send unsolicited advertisements, not downstream formatting decisions made by recipients or service providers. An outcome that effectively immunizes senders of junk faxes from class-wide accountability. contradicts both the remedial purpose of the statute and the practical realities of fax technology.

Defendant also mischaracterizes *Lyngaas v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021) in two ways. First, it incorrectly labels the Sixth Circuit's decision as "non-precedential" and falsely claims Plaintiff conceded the point. *Curaden* is a 62-page appellate decision that remains fully precedential. That it is not *binding* outside the Sixth Circuit in no way makes it non-precedential.

Second, Defendant (and the Fourth Circuit in footnote 5 of *Career Counseling*) attempts to distinguish *Curaden* by asserting that the fax technology at issue was somehow different. *Career Counseling,* 91 F.4th at 210 n.5. That is incorrect. The *Curaden* court specifically addressed faxes received through online services. *Curaden*, 992 F.3d at 426 (discussing faxes sent through Westfax, a large online fax service). The Sixth Circuit rejected that argument.

The Sixth Circuit correctly concluded that it does not matter whether a fax is received by a server in a home office or in the offices of a third-party fax service because an "an efax 'is sent over a telephone line' rather than 'as an email over the Internet.'" *Career Counseling*, 91 F.4th at 210 n.5, *quoting Curaden*, 91 F.4th 427. That is the point. There *is no such thing as a fax sent as an email over the Internet.*

5

Those are called emails, they are sent using Simple Mail Transfer Protocol (SMTP) protocol, and they are addressed to recipients using the username@domain.xxx format. Faxes, on the other hand, including those received by third party "efax" services, are both sent and received using the T.30 protocol, over the public switched telephone network (or PSTN), and addressed to a ten-digit number.

The Sixth Circuit squarely addressed this distinction:

> The Bureau also clarified its earlier email caveat: "By contrast, a fax *sent as an email* over the Internet—*e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email message— is not subject to the TCPA." 30 F.C.C. Rcd. at 8623–24 ¶ 10 (emphasis in original). In other words, with an efax "[t]here is an end-to-end communication that starts when the faxed document is sent over a telephone line and ends when the converted document is received on a computer," whereas emails originate not as a fax over a telephone line, but "over the Internet." *Id.*

*Curaden*, 992 F.3d at 426-27, discussing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133 ¶ 200 (2003) and *In the Matter of Westfax, Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620, 8622 ¶ 5 (2015).

Defendant—and the Fourth Circuit in *Career Counseling*—have attempted to invent a third category of communication: not quite a fax, not quite an email, but a "fax sent as an email." As *Curaden* and the 2003 FCC Order it interprets make clear, that third category does not exist. A document sent using the T.30 protocol over a telephone line is a fax. The fact that it is later converted and forwarded as a PDF does not change what it is.

Turning to the record in this case, none of the transmissions at issue were sent as e-mails. That is undisputed. All were sent to ten-digit telephone numbers using

6

the T.30 fax protocol over the PSTN. ECF 102-1-1. Even any received via online fax services were received by a "fax server and modem," *Curaden*, 992 F.3d at 426, before being attached to an email and forwarded. That is all the statute requires. The Court should revisit its prior holding.

## II. The type of fax equipment used is an easily established question and can be addressed through declarations, as the Third Circuit held in City Select.

Even if Defendant were correct that TCPA violations turn on the unknowable distinction between "a fax" and a hypothetical "fax sent as an email," that ambiguity does not preclude class certification. In fact, that conclusion is directly at odds with the Third Circuit's decision in *City Select*, which permits class certification even where declarations are required to establish eligibility.

Defendant argues that Plaintiff's claims process was ineffectively described and is procedurally barred. But that ignores Rule 23's express provision that "[a]n order that grants or denies class certification may be altered or amended before final judgment," Fed. R. Civ. P. 23(c)(1)(C), and the Third Circuit's holding in *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020), that courts may not graft a heightened reconsideration standard onto Rule 23 motions. "District courts should treat renewed motions for class certification as they would initial motions under Rule 23." *Id*. Class certification is not a one-shot opportunity

On the merits, Defendant misreads *City Select*. Defendant attempts to distinguish it on the ground that the database at issue in *City Select* was not produced, whereas here Defendant has produced fulsome, reliable transmission

7

records that "do not include any information regarding the alleged recipients' fax equipment." Opp. at 11. That distinction is immaterial.

The class was defined to include persons in the defendant's database who were sent faxes. *City Select,* 867 F.3d at 437. The defendant chose fax recipients from the database, but there were no records showing intended recipients or successful transmissions (much less what fax receiving equipment the recipients had). *Id.* The database was not produced before the appeal. *Id.* The defendant argued that the class was not ascertainable because there was no way to determine which entities in the database were targeted with and received the faxes without asking them. *Id.* The district court agreed and denied class certification. *Id.*

The Third Circuit reversed for two reasons. First, it rejected the categorical exclusion of affidavits as a means of establishing ascertainability, holding that "affidavits from potential class members, in combination with the Creditsmarts database," could satisfy the standard. *Id.* at 440. Second, because the database had not been produced, the plaintiff had been denied a fair opportunity to show that it could serve as a reliable basis for ascertaining class membership. *Id.* at 441.

Defendant seizes on the fact that the Creditsmarts database was not produced there, as compared to the fulsome, reliable records of who was sent Defendant's faxes and which transmissions were successful, and notes that the transmission records here "do not include any information regarding the alleged recipients' fax equipment." Opp. at 11. But that is no difference; the database in *City Select* did not and was never going to have any information about whether a particular dealership was targeted in

8

the fax campaign or whether any attempted fax transmission to any dealership was actually successful. The database was merely the source material from which the fax target lists were derived.

The Third Circuit was fully aware of this. It quoted the district court's reasoning for denying certification as "even though Plaintiff may be able to identify the potential universe of fax recipients, there is no objective way of determining which customers were actually sent the BMW fax." *City Select*, 867 F.3d at 438. In other words, the district court in *City Select* reached the same conclusion as the Court here—although it should again be noted that neither the district court nor the Third Circuit in *City Select* considered it at all relevant that they also did not know what type of fax receiving equipment each dealership had—and the database was not going to have that information either.

The Third Circuit reversed. True, as Defendant observes, the court did not definitively hold that class certification was required on remand, but instead reserved because it had not seen the database. But it was not concerned with whether the database actually contained information proving receipt of fax transmissions—which of course it would not—but rather because "[t]he determination whether there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition must be tailored to the facts of the

9

particular case. The amount of over-inclusiveness, if any, of the proposed records is a critical consideration." *Id.* at 442.[1]

Here, unlike *City Select*, there is no indication of over-inclusiveness in the fax transmission records. Defendant has not shown that any of the successfully transmitted faxes were delivered "as email" or to anything other than a traditional fax machine. In fact, there is no evidence at all about how any individual class member received the fax, just as in *City Select*. The critical difference is that the evidence of successful transmission—receipt—is stronger here than in *City Select*, not weaker. Yet Defendant uses that as a reason to exclude class treatment.

*City Select* did not suggest that the type of fax machine used by the recipient matters at all for Rule 23 purposes. Neither the district court nor the Third Circuit raised the issue, and the database at issue did not and could not have contained that information. If the TCPA requires inquiry into each recipient's equipment, as Defendant claims, *City Select* would have failed at the threshold. It did not.

Finally, Plaintiff's proposed claims process is entirely consistent with *City Select* and objectively reliable. It begins with a sworn declaration of equipment use, corroborated by Defendant's own transmission logs. If Defendant contests the claim, the class member may provide additional documentation—such as a purchase receipt, tax or inventory record, or service agreement. Defendant dismisses this approach by

---

[1]   The *City Select* class was ultimately certified, with class members required to submit claims, as part of a settlement. *City Select Auto Sales, Inc. v. BMW Bank of North America, Inc.*, Case No. 13-cv-4595 (D. N.J. Jan. 7, 2020) (Doc. 171). The district court ruled that the settlement class "satisfies all the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at ¶ 12.

10

asserting, sarcastically, that most recipients lack records because they are not "serial litigants." Opp. at 12. That misses the point.

Business tax records are routinely retained for years. *See* https://www.accountingdepartment.com/blog/how-long-should-you-keep-business-records ("Most lawyers, accountants and bookkeeping services recommend keeping original documents for at least seven years.") If a class member purchased a fax machine online, the receipt likely still exists in an email archive or on a seller's account portal. Amazon, for example, maintains order history back to at least 2002. Purchases made by check or credit card are preserved in banking records. The idea that such documentation is universally unavailable is unsupported and implausible.

Nor does this framework pose any due process problem. If it did, the Third Circuit would have said so in *City Select*. Instead, it held the opposite. "In this case, we will vacate and remand for two reasons. First, our ascertainability precedents do not categorically preclude affidavits from potential class members, in combination with the Creditsmarts database, from satisfying the ascertainability standard." *City Select*, 867 F.3d at 440. Supporting affidavits will always supply some information not otherwise available. In *City Select*, it was actual receipt of the faxes. Here, it is the type of fax machine used at the time.

To avoid repeating the same error as the district court in *City Select*, this Court should reconsider its denial of certification or certify the narrower class. A post-judgment affidavit process to confirm receipt by qualifying fax equipment is entirely

11

consistent with Third Circuit precedent, even if the Court continues to believe that some recipients might ultimately fall outside the statutory protection.

### III. At minimum, the Court should certify an issues class under Rule 23(c)(4).

Even if the Court finds individualized proof of fax machine type defeats certification under Rule 23(b)(3), it should certify common issues under Rule 23(c)(4). Those include: (a) whether Defendant sent advertisements; (b) whether Defendant sent those advertisements without prior express invitation or permission; (c) whether the advertisements lacked the required opt-out notice; and (d) whether Defendant sent the faxes to the ten-digit numbers in its transmission logs using the PSTN and T.30 protocol. Each of these questions turns solely on Defendant's conduct. They are class-wide issues that can and should be resolved in a single proceeding.

Rule 23(c)(4) expressly permits certification of "particular issues," and the Third Circuit has emphasized that district courts should consider doing so where common questions predominate on specific liability elements. *See Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 268 (3d Cir. 2021); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011).

Defendant argues (ECF 126, at 14–15) that issue certification must be rejected because some class members may not ultimately recover damages. But that is not the standard. As Plaintiff explained (ECF No. 122, at 23–26), Rule 23(c)(4) permits issue certification where it will materially advance resolution of common issues, even if individualized inquiries remain. The Third Circuit in *Russell* held that issue certification may be appropriate, even if resolving the issue class will not resolve

12

defendant's liability, "provided that [ ] certification substantially facilitates the resolution of the civil dispute, preserves the parties' procedural and substantive rights and responsibilities, and respects the constitutional and statutory rights of all class member and defendants." 15 F.4th at 270. That is exactly the case here.

Defendant's specific objections fall flat. First, it rehashes its consent arguments from the original class certification briefing. As discussed previously, Plaintiff's proposed class includes only persons who were sent a fax without having interacted with Defendant first or after they told Defendant not to send more faxes or surveys.

Second, Defendant argues that issue certification is pointless because no one could win a follow-on claim. That assertion is speculative and unsupported. Businesses routinely retain equipment receipts, service contracts, tax documents, and other records showing what equipment they use. As discussed above, such records are easily retrieved—especially for durable capital assets like fax machines. Even if a class member no longer has a physical receipt, testimony, electronic purchase records, or bank data could be used. This is how damages are proven in individual litigation every day.

Rule 23(c)(4) exists to separate the common from the individual. If the Court declines to certify either the original or alternative class under Rule 23(b)(3), then it should use Rule 23(c)(4). Certifying an issues class to resolve Defendant's uniform conduct under the TCPA would materially advance this case and preserve the parties' rights, leaving any individualized questions for later proceedings.

## CONCLUSION

Defendant violated the federal rights of thousands and now seeks to evade accountability through speculation and misstatements of law. What if a recipient received Defendant's junk fax on non-qualifying equipment? What if they no longer have purchase records? These "what ifs" do not justify denying relief to the overwhelming majority who plainly fall within the TCPA's protections. Hypothetical edge cases cannot defeat class certification.

The Court should: (1) reconsider its prior order and certify the originally proposed class; (2) alternatively, certify a narrower class excluding recipients who received faxes solely through online-only services; or (3) at minimum, certify common issues under Rule 23(c)(4) to resolve Defendant's uniform conduct on a class-wide basis.

Dated: August 4, 2025

Respectfully submitted,

By: /s/ Phillip A. Bock

Richard Shenkan (PA 79800)
Shenkan Injury Lawyers, LLC
P.O. Box 7255
New Castle, PA 16107
(412)716-5800
rshenkan@shenkanlaw.com

Phillip A. Bock (pro hac vice)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St. Ste. 2100
Chicago, IL 60601
(312) 658-5500
service@classlawyers.com

Lawrence F. Stengel
Saxton & Stump, LLC
280 Granite Run Dr., Ste. 300
Lancaster, PA 17601
(717)556-1080
lfs@saxtonstump.com

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 4, 2025, he caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

By: /s/ Phillip A. Bock